# Wytheville.

George and John Jones v. Commonwealth.

June 26, 1902.

1. Criminal Law—*Venire Facias—General Objection—Failure of Counsel to Specify.*—A general objection to a writ of *venire facias* in a felony case, without stating cause, is sufficient to raise any objection apparent on the face of the writ. It is the duty of counsel, however, as officers of the court, when requested by the court to do so, to point out such errors and defects in the writ as they have knowledge of, but their failure to do so will not deprive the prisoner of the benefit of his objection on a writ of error.

2. Criminal Law—*Venire Facias—Summoning Wrong Number of Jurors.*— A *venire facias* is an indispensable process for the summoning of a jury in a felony case, but a *venire facias* which directs the summoning of a different number of jurors from that required by the statute is a void process, and there can be no valid trial thereunder.

3. Criminal Law—*Venire Facias—Error on Face.*—It is not incumbent on a prisoner to show that he has been injured in consequence of an error apparent on the face of a writ of *venire facias* when he has made objection thereto in due time.

4. Criminal Law—*Malice—Deadly Weapon—Case at Bar.*—Where the fatal blow was struck by the prisoner with an iron post-hole digger with which he had been working, and which he claims he had in his hand at the time of the homicide, it was not error to instruct the jury that "a mortal wound given with a deadly weapon in the previous possession of the slayer, without any or upon very slight provocation, is *prima facie* willful, deliberate and premeditated killing, and throws upon the accused the necessity of proving extenuating circumstances."

5. Criminal Law—*Instructions—Abstract Propositions.*—It is not error to refuse instructions, though abstractly right, upon points about which no question was, or could have been, raised. Such instruc-

tions merely raise immaterial and irrelevant issues, and tend to confuse and mislead the jury.

Error to a judgment of the Circuit court of Tazewell county, affirming a judgment of the County Court of said county, rendered February 3, 1902, whereby plaintiffs in error were sentenced to the penitentiary for ten years each, upon a conviction of murder of the second degree.

*Reversed.*

The opinion states the case.

*H. C. Alderson, J. N. Harman, J. C. Wysor* and *V. L. Sexton,* for the plaintiffs in error.

*Attorney-General William A. Anderson, Henry & Graham* and *Chapman & Gillespie,* for the Commonwealth.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Tazewell county, affirming the judgment of the County Court of that county sentencing plaintiffs in error to the penitentiary for a term of ten years each for the murder of John G. Watts. It will be necessary to an understanding of the questions presented to make a brief statement of the case.

Owing to domestic troubles, John G. Watts and his wife, about eighteen months prior to his death, separated, and much litigation touching his estate followed. Partition had been made of what is known as the "Watts farm," and the mansion house and a part of the farm were set apart to John G. Watts and his son, Bowen Watts, and the residue of the farm to Mrs. Watts. The parties in interest were satisfied with this partition, and entered into possession of their respective parts. Mrs. Watts and Bowen Watts had entered into an agreement to construct a line fence between the properties as partitioned, each agreeing to furnish three hands

and a team for the purpose. William Jones and his two sons, George and John, plaintiffs in error, were employed upon the part of Mrs. Watts, and Oscar Hedrick, Samuel White and James Lawrence on the part of Bowen Watts. It was agreed between William Jones and Bowen Watts that the building of this fence should begin on the 29th of November, 1901, and the Joneses were on the ground for that purpose: Bowen Watts and his three hands came to the ground, and two of them, White and Lawrence, went back to the house for some purpose, and Bowen Watts went off to the residence of a neighbor. The building of the fence began at a fence on the side of the public road. William Jones was engaged in laying the worm of the fence some seventy-five or one hundred yards from the public road. George Jones and Oscar Hedrick were digging post-holes near the public road; the former being about thirty feet farther from the road than the latter, and John Jones a little distance off from the point at which George Jones was at work. A short time after this work was begun, and while the Joneses were occupying the positions stated, John G. Watts rode to the gate at the road, near to the point where Oscar Hedrick was at work, and directed him to open the gate, and, without giving him time to do so, called the second time to him to open the gate, and, riding through it with his left hand in his trousers' pocket, said, "I notify you all to get out of here," riding towards George Jones, who replied, "that is all right," and applying a vile epithet to Watts. Watts continued to ride towards him, saying, with an oath, "I am not afraid of you," and, George Jones having advanced some five or six steps, they met, when George Jones struck Watts from his horse with an iron post-hole digger, with which he had been working, crushing his skull; and at the same time John Jones threw two rocks (as he confessed), one of which at least took effect. The death of Watts, which occurred almost instantly, would have resulted from either blow. William Jones started to the place of the

killing, and was heard to say, "Don't do that, boys," and upon approaching the deceased, lying upon the ground, saw that he was dying, if not already dead, and went for a doctor.

George and John Jones surrendered to an officer of the law, and William Jones was afterwards arrested, indicted jointly with his two sons, and all were tried jointly at the January term, 1902, of the County Court of Tazewell, William Jones being acquitted, and his sons, George and John, convicted of murder in the second degree, and sentenced to the penitentiary for ten years.

The clerk of the County Court issued a *venire facias* commanding the officer to summons twenty-four persons of his county, instead of sixteen, as the statute required, to be taken from a list furnished by the judge for the trial of the defendants, and, before the jury selected to try the case were sworn, the defendants moved the court to quash the *venire facias*, which motion was overruled, and this ruling of the court constitutes the first assignment of error that we are called upon to consider.

It is not stated in the bill of exceptions taken to this ruling of the court, but it does appear in the order of the court that counsel for the defendants were requested to point out any errors in the *venire facias*, whereupon they said, "they had none to point out."

The statute in force when this trial took place, found in sec. 4018 of the Code, as amended (Acts of 1899-1900, p. 566), requires that "the writ of *venire facias*, in a case of felony, shall command the officer to whom it is directed to summon sixteen persons of his county or corporation from a list to be furnished him by the court of such county or corporation, or the judge thereof in vacation, residing remote," etc.

In *Hall's Case*, 80 Va. 555, when the statute required that the writ of *venire facias* should command the officer to whom it was directed to summon "twenty-four persons to be taken from a list to be furnished by the judge," etc., it appears that

twenty-four jurors having been summoned in the manner prescribed by law, the prisoner, by his counsel, asked that the selection of the panel of sixteen from the number summoned be by lot, but the court directed that a panel of twenty-four, free from exception, should first be obtained, and that from such panel sixteen should be chosen by lot. Thereupon it was ascertained that seventeen of the twenty-four summoned under the *venire facias* were free from exception. By direction of the court (without a *venire facias*), the sheriff then summoned additional jurors from the bystanders, until seven other persons were found free from exception, and thereupon, from the twenty-four persons so found, sixteen were selected by lot. From this list thus selected, the prisoner struck off the names of four persons, and the remaining twelve were sworn as the jury in the case. After the verdict was rendered, the prisoner moved for a new trial, on the ground that "the jury which tried him was neither selected, summoned, nor impanelled in the manner required by law," which motion the court overruled, and thereupon, on the same ground, he moved in arrest of judgment, which motion was also overruled, and sentence on the prisoner pronounced. It was held, that "in felony cases, where from those summoned and in attendance, a sufficient number of jurors cannot be had, a new *venire facias* must be *directed*, requiring to be summoned from the bystanders, or from a list to be furnished by the court, as many persons as may be deemed necessary. Omission to direct a new *venire facias*, or omission of any statutory essential apparent on the record, is error, and may be taken advantage of after verdict by motion in arrest of judgment, failure of accused to make the objection before jury sworn being no waiver."

In the opinion by Lewis, P., after quoting the statute, it is said: "These provisions of the statute in respect to impanelling juries are not directory merely, but imperative. They are rules which are made essential in proceedings involving life or liberty,

and it is the right of the accused to demand that they be complied with. To disregard them is to deprive the accused of that 'due process of law' which is provided by the Legislature, and which is required by the fundamental law of the land.

"A venire is indispensable, and, in a felony case, and especially in one affecting the life of the accused, the court is not authorized to dispense with process required by the common law and also by statute." And, after pointing out the particulars in which the statute had been departed from, the opinion further says: "This the statute requires, and if one of the formalities which it prescribes may be disregarded, all may be set at naught."

This decision, and the decisions in *Richard's Case*, 81 Va. 110, and *Honesty's Case*, Ibid. 283, to the same effect, doubtless gave rise to the amendment of our statute in regard to irregularities in impanelling juries in civil cases so as to make the statute apply also to criminal cases. Act of January 18, 1888 (Acts of 1887-'8, p. 15), and section 3156 of the Code. That statute, as amended by the act of February 27, 1894 (Acts of 1893-'4, p. 494), is as follows:

"No irregularity in any writ of *venire facias*, or in the drawing, summoning, returning or impanelling of jurors shall be sufficient to set aside a verdict, unless the party making the objection was injured by the irregularity, or unless the objection was made before the swearing of the jury; and no judgment shall be reversed for the failure of the record to show that there was a *venire facias*, unless made ground of exception in the trial court before the jury is sworn. *This act shall apply to jurors and juries in all cases, criminal as well as civil.*"

The amendment of the statute applying it to criminal cases we have italicized.

In *Spurgeon's Case*, 86 Va. 652, the judgment being rendered before the passage of the act of January 18, 1888, *supra*, the previous statute in regard to irregularities in impanelling

juries did not apply, and Lewis, P., in the opinion, calls attention to that fact, adding, it is otherwise since the passage of that act (that is, it would apply to cases where the judgment was rendered after the passage of the act). In that case, the *venire facias*, instead of commanding the sheriff to summon twenty-four jurors, as the statute then required, commanded him to summon sixteen only, and did not recite, nor did it appear from the record, by whom the list of names was furnished. Held, that the writ was invalid; that the failure of the record to show that the jury was regularly summoned is error, whereof advantage may be taken in the appellate court, though no objection is taken below; and that, in proceedings involving deprivation of life or liberty, whatever is essential must affirmatively appear of record, and where a waiver by the defendant leaves the record destitute of *an essential part* he may afterwards take advantage of the defect, notwithstanding the waiver.

After stating that strict compliance with all essential formalities in a felony case is necessary to constitute a proceeding by "due process of law," the opinion continues: "If we look to the writs of *venire facias*, as they are copied into the record, it is very clear that the statute was not complied with. But these writs are not properly part of the record, as they were not made so by bill of exception or otherwise, and we have only referred to them by way of illustrating the proper procedure under the statute. Still the result is the same, for, leaving them out of the case, there is nothing in the record to show that any jury process was issued in the case at all, much less that the jury was summoned according to the formalities prescribed by the statute."

It seems to be conceded in the argument in this case on behalf of the Commonwealth that, but for the act of February 27, 1894, *supra*, the decision in *Spurgeon's Case* would control, and a new trial would have to be awarded plaintiffs in error; therefore, the contention is that the failure of counsel for plaintiffs

in error to point out the defect in the writ of *venire facias* is to be taken as a waiver of the irregularity of the writ.

This brings us to a consideration of the decisions of this court since the passage of that act.

In *Vawter's Case*, 87 Va. 247, when the statute required that the writ of *venire facias* command the officer to summon twenty persons as jurors for the trial of a felony case, the writ was issued in due form for the trial, and the judge of the court gave the sergeant to whom the writ was directed a list of *twenty-nine* persons from which to summon the twenty jurors as required by the statute, and when the case was called for trial, it was found that of the persons whose names were upon the said list, a sufficient number of jurors to constitute a panel of sixteen, free from exception, could not be had, whereupon the court, *without directing another venire*, ordered the sergeant to complete the panel by summoning six persons, whose names were upon a list made by the sergeant and adopted by the court, who were accordingly summoned, but without a writ of *venire facias* issued by the clerk, and no objection on this ground appeared to have been made by the accused before the swearing of the jury.

There it was contended that the errors in summoning, selecting, and impanelling the jury, appearing upon the face of the record, were but irregularities of which the prisoner could not take advantage except by objection thereto, made before the jury was sworn, or by showing that he had been injured thereby.

The first question was whether the list furnished by the judge containing the names of twenty-nine persons instead of twenty, and purporting to be "for trial of felonies" generally, was irregular, and if so, was the prisoner, by section 3156 of the Code, precluded from taking advantage of the irregularity by his failure to make objection on that ground until after verdict, it not appearing that he was injured by the irregularity. It was held that the list furnished by the judge was an irregularity, and that the prisoner could not take advantage of it after ver-

dict, but, in a later opinion by the same learned judge (*Drier's Case*, 89 Va. 532), this ruling is shown to have been inadvertently made; it being said in the opinion in the latter case that the language used in the former, from which the inference that the court regarded the list furnished by the judge as an irregularity, is warranted, was used unguardedly; and, besides, it was not necessary to a decision of the case, inasmuch as the objection was not made before the swearing of the jury.

As to the other question presented in *Vawter's Case*, *supra*, and arising on the objection, made after verdict, to the action of the court in ordering an additional number of persons to be summoned to complete the panel, without directing another *venire facias*, it was held that the objection was well taken, the opinion saying: "This court has repeatedly decided that a *venire facias* is an indispensable process, both at common law and under the statute, to authorize an officer to summon a jury in a felony case, and that the courts have no power to dispense with it, although, as was said by Spencer, C. J., in *People* v. *McKay*, 18 Johns. 212, they may not perceive much use in continuing it. The objection, therefore, was in time, although made for the first time on motion in arrest of judgment; for, as was held in *Jones' Case*, *ante* p. 63, the act of the Legislature, above mentioned (act of January 18, 1888, *supra*), was intended to cure any irregularity in the writ of *venire facias*, not to the prejudice of the accused, if not objected to before the swearing of the jury, but not to apply to a felony case in which there was a failure to issue a *venire*, when and as often as a *venire* is required; so that, in this *particular*, *Hall's Case*, 80 Va. 555, is not affected by that act."

In *Muscoe's Case*, 87 Va. 460, it is held that, though a writ of *venire facias* has been exhausted by the answers of the veniremen, yet it should be quashed for irregularity on its face, as such writ is, in legal intendment, no process at all. But, where the writ was quashed on prisoner's own motion it afforded no ground for reversal.

The issue in *Drier's Case, supra*, was, whether it was an irregularity in the drawing, summoning, etc., of the jury for the judge's list, furnished the officer to whom the *venire facias* was directed, to contain more names than the number of persons that the writ commanded to be summoned, and, since the statute did not specify the number of names the judge's list should contain, it was held not to be an irregularity.

The provision of the present statute requiring that the writ of *venire facias*, in case of felony, shall command the officer to whom it is directed, to summon sixteen persons (not twenty-four) of his county or corporation, from a list to be furnished him by the court, etc., is no less imperative than was the statute when *Spurgeon's Case* was decided. The only difference between the two statutes is as to the number of persons to be summoned. No subsequent legislation on the subject has changed the law as laid down in *Spurgeon's Case*. On the contrary, the amendments since passed have been enacted in the light of that decision, without in any way questioning its force or authority, and must therefore be regarded as legislative approval of the view there taken. Having held in *Spurgeon's Case* that a *venire facias* which summoned a different number of persons from that called for by the statute was invalid, which we understand means void, we must hold that the writ in the case at bar, which summons a different number from that prescribed, is also invalid, or overrule *Spurgeon's Case*, which we are not warranted in doing.

As was said in *Hopt* v. *Utah*, 110 U. S. 574, cited with approval in *Spurgeon's Case:* "That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the conduct of the accused, much less by his mere failure, when on trial or in custody, to object to unauthorized methods."

In the case at bar, plaintiffs in error did object to the *venire facias*, and within the time that the statute required the objec-

tion to be made, and, having done so, the duty of showing that they have been injured by the error apparent upon the face of the writ did not rest upon them. A motion to quash a writ of *venire facias*, without saying more, is the equivalent of a motion to quash because of irregularity apparent upon the face of the writ. It was said by Allen, J., in *Wash's Case*, 16 Gratt. 538, where the motion to quash the writ of *venire facias* was for one defect which was specified, and others alleged to be apparent on the face of the paper: "The motion raised every objection to the writ for matter apparent on the face of it. It is the duty of the Commonwealth, through her officers, to conduct her prosecution according to law, and no obligation rests on the accused to point out errors for the benefit of the Commonwealth." In that case, it was held that omission of the accused to point out the error apparent on the face of the writ of *venire facias* in the court below did not preclude him from raising the objection in the appellate court.

If a clerk may not depart from the provisions of a statute, as was done in *Wash's Case, supra*, by adding to the *venire facais* the words, "*and owns property, real or personal, of the value of one hundred dollars at least*," when the statute only required that the twenty-four persons summoned should be "freeholders," or, as in *Spurgeon's Case*, command the officer to whom the writ was directed to summon *sixteen* persons as jurors, when the statute directed *twenty-four* to be summoned, why may the clerk make the writ command *twenty-four* persons to be summoned when the statute required only *sixteen* to be summoned? In each instance there was a departure from the provisions of the statute, and, as was said by Allen, J., in *Wash's Case*, "no such power has been intrusted to any functionary, and, not being authorized by law, the court erred in overruling the motion to quash;" and by Lewis, J., in *Spurgeon's Case*, "if one of the formalities which it (the statute) prescribes may be disregarded, all may be set at naught."

Opinion.

It is true, as counsel contend, what was said in *Wash's Case* relates to a statute very different from section 3156 of the Code, as amended by the act of February 27, 1894; but it would seem clear that the reasoning of Allen, J., and Lewis, P., is equally applicable to the case at bar. To take this case out of the control of the decisions we have cited and quoted from, the omission of counsel for plaintiffs in error to point out the defect in the writ of *venire facias*, when asked by the trial court to do so, is as we have seen, alone relied on. It was the plain duty of counsel, as officers of the court, when requested to do so by the court, to point out such errors or defects in the writ as they had knowledge of, but we do not think that their failure to do so should deprive the prisoner of the benefit of his objection in this court, especially since it does not appear that their attention had been called to the fact that the clerk, in issuing the writ, had disregarded the plain mandate of the statute. Again, it has been the settled practice of this court to give the accused in a criminal prosecution the benefit of his demurrer to the indictment, or his motion to quash the writ of *venire facias* for error apparent on its face, although the special grounds of the demurrer or the motion to quash were not pointed out. The same practice in reference to demurrers to declarations in civil causes prevailed until recently, when the Legislature saw proper to change the rule, and to require the party demurring to point out specifically the grounds of demurrer when requested by any party thereto, or of its own motion, and no grounds shall be considered other than those so stated. (Acts of Assembly 1899-1900, p. 111.) The failure of the Legislature to change the rule in criminal cases is an implied approval of the practice which then and now exists in such cases. For this court to change the rule now would not only be making law by abrogating a long-established practice, but would be doing so in the face of an implied legislative approval of the ancient practice.

It may be that some of the rules of practice and procedure

which the common law as administered in this State has thrown around the accused for his protection, and which are still in full force, are neither wise nor necessary, but that is a question for the Legislature.

It is not our province to make or unmake the law, but to construe it as written when it becomes our duty to do so, and as we interpret section 3156 of the Code, as amended, *supra*, the plain meaning of its language is that, if there be irregularity in any writ of *venire facias*, as in drawing, summoning, returning or impanelling of jurors in felony cases, an objection to the writ by the accused before the jury thus selected is sworn must be sustained, and though the objection be not made before the verdict of the jury is rendered, if it appears that the accused has been injured by the irregularity, he may take advantage of it by motion in arrest of judgment, or in the appellate court.

It is therefore our opinion that the County Court erred in not sustaining the motion of plaintiffs in error to quash the *venire facias*.

In the progress of the trial the Commonwealth introduced three witnesses to prove that William Jones had made threats against the deceased, and to the introduction of this evidence plaintiffs in error excepted generally, but the exceptions were overruled, and the evidence was admitted. They afterwards moved to strike it out, and this motion was also overruled, to which ruling exception was also taken.

This assignment of error involves the important question as to whether or not, in a joint prosecution against several defendants, where evidence is admissible as to one and not as to others, and there is a general objection to its admissibility by such others, it is the duty of the court, of its own motion, to limit the evidence to the party against whom it is admissible, or of the objectors to make a motion to that effect.

As William Jones, the only defendant as to whom the evidence was admissible, was acquitted at the former trial, the

question cannot again arise in the case, and we therefore decline to express any opinion on the subject.

The next assignment of error relates to all of the instructions given for the Commonwealth over the objection of plaintiffs in error, but this objection is not urged here, except as to instruction No. 8, which is as follows:

"A mortal wound given with a deadly weapon, in the previous possession of the slayer, without any, or upon very slight, provocation, is *prima facie*, wilful, deliberate, and premeditated killing, and throws upon the accused the necessity of proving extenuating circumstances."

This instruction, as is conceded, propounds a correct proposition of law, and has been repeatedly sanctioned by this court. *Honesty's Case, supra,* and authorities there cited. In that case, the prisoner struck his victim the fatal blow with a half of brick which he had but a moment before picked up; and because plaintiff in error, George Jones, perchance had in his hand the iron post-hole digger with which he had been working, and with which he struck the deceased from his horse, does not differentiate the case from *Honesty's Case* and make the well-settled proposition of law propounded in the instruction inapplicable to it. Therefore the instruction was properly given.

The refusal of the court to give instructions Nos. 7, 8 and 9 asked for by plaintiffs in error is assigned as error. Each of these instructions contained practically the same proposition of law, viz.: that William Jones, and his two sons, plaintiffs in error, were lawfully and rightly where they were engaged in the construction of the line fence on the "Watts farm," and when the homicide of the deceased occurred. While these instructions were abstractly right, still no question was raised, nor could have been raised, from the evidence in the case, as to the right of William Jones and plaintiffs in error to be where they were when the homicide was committed, and the instructions could have served no other purpose than to raise an immaterial

and irrevelant issue, thereby tending to mislead and confuse the jury, and were rightly refused. *State* v. *Clark* (West Va.), 41 S. E. 204; *Myer* v. *Falk*, 99 Va. 385, and *McCoy* v. *Norfolk & Carolina R. Co.*, Ibid. 132.

The remaining assignment of error calls for an expression of opinion from us as to the weight of the evidence, which we prefer not to give, as the case, for the error pointed out, has to be remanded for a new trial.

The judgment of the Circuit Court complained of must be reversed and annulled, and this court will enter such judgment as the Circuit Court ought to have entered, setting aside the verdict of the jury, and remanding the cause to the County Court for a new trial.

KEITH, P., dissenting.

I am constrained to dissent from the opinion of the court in this case.

I concede in the outset that the *venire facias* which required the sheriff to summon twenty-four men when the statute directed sixteen to be summoned was an irregularity. I concede that, objection having been made to the writ by a motion to quash before the jury were sworn, these facts, standing alone, might warrant the court in quashing the writ. The deviation of the writ from the statute was not in a particular which could have affected the rights of the accused. It was unlike the case of *Wash* v. *Commonwealth*, 16 Gratt. 530, where the clerk interpolated into the writ a direction that the jurors to be summoned should "own property, real or personal, of the value of one hundred dollars at least," words not occurring in the statute, and the effect of which was to change the qualifications of the jurors. In this case, the law provided that the *venire facias* should issue to summon sixteen persons for the trial of the prisoners. The writ which was issued and actually served provided that twenty-four persons should be summoned. From

this list of twenty-four only fifteen names were obtained of
jurors free from objection. A second *venire* for that number
was issued from which no jurors were obtained, and it was only
after a third *venire* was issued that sixteen persons free from
just exception were obtained, from whom an impartial jury for
the trial of the prisoners was selected. If the first writ had been
quashed, it would have been entirely competent for the sheriff
to have summoned those named in it and in attendance upon the
court in obedience to the second writ, and I cannot conceive
that it was within the range of possibility that the prisoner
should have been wronged or injured in the slightest degree by
the course which was pursued. The whole object of the law is
to obtain a jury free from all legal objection, to stand impartial
between the Commonwealth and the prisoner, ready and able to
give him a fair trial without favor or prejudice, and there is no
pretence or suggestion that this end was not attained in this case.

It is true that in the case of *Wash* v. *Commonwealth* the court
held a general motion to quash the *venire facias* sufficient
to bring before the trial court every objection that existed to
the writ. It is true that the court which decided *Wash's Case*
is worthy of all respect, but I presume to think that its judgment
in the case is not in accordance with the trend of judicial
opinion at this day, which demands that objections shall be
specifically stated, "to enable the trial judge to understand the
precise question upon which he has to rule, and to relieve him
from the burden of searching for objections which counsel is
unable to discover, or which he sees fit to conceal, and to afford
the opposite party an opportunity to obviate it before the close
of the trial, if well taken." 1 Thompson on Trials, p. 561;
Greenleaf on Ev. (16 ed.), note to pages 6 and 7.

It is true that these quotations are dealing directly with the
subject of the admissibility of evidence, but that would rather
serve to strengthen than to diminish the force of what has been

quoted.  Juries are not always able to discriminate between what is relevant and what is irrelevant in the testimony submitted to them, and yet if testimony be admissible for any purpose whatever in a case, a general objection to it does not suffice, but the trial court is entitled to have the objections specifically stated, so that its attention may be directed to the very point at issue.  *Cluverius* v. *Commonwealth*, 81 Va. 787.  If this be true with respect to the admissibility of testimony which may or may not be prejudicial, by how much more is it true with respect to mere irregularities in matter of form, the decision of which one way or the other cannot prejudice or in any degree affect the fate of the prisoner.  I repeat that I have great respect for the court, and the learned judge who delivered the opinion in *Wash* v. *Commonwealth*.  I should feel obliged to follow it in an identical case, but it seems to me to be far better practice, one promotive of the administration of justice, one which can work no injury to any party, to require objections made during the progress of the trial to be so presented to the trial judge that he may give an intelligent judgment upon the precise matter in issue, and not be left to grope in the dark.

Prisoners are entitled to counsel as a matter of right, and counsel represent them in the presence of the court.  There are rights which the prisoner cannot waive, and which, of course, counsel cannot waive for him, but there are mere irregularities as to which counsel may bind him either by express waiver or by conduct, as when he remains silent when it was his duty to speak.

There is a broad distinction between *Wash's Case* and the one under investigation.  In that case there was a motion to quash and nothing more, but here the court called upon counsel to point out any errors that might exist in the writ, to which counsel replied that they had none to point out, and thereupon the motion to quash was overruled.  I think it was the duty of counsel to answer the question of the court fully and frankly.

Dissenting Opinion.

Attorneys are officers of the court. They bear a part, a highly honorable and necessary part, in the administration of justice, and that they should perform their functions in the most efficient manner, mutual confidence and esteem should characterize the relations between the court and the bar; and especially should those relations be entirely frank and open. It is, in my judgment, essential to the due and orderly conduct of business in court that this should be so. I think this circumstance takes this case out of the influence of *Wash* v. *Commonwealth*. I think that, under the circumstances narrated, there was no sufficient objection made to the *venire*; or, if that be not so, that when counsel declined to specify the objection, it was a waiver of objection, and that the plaintiffs in error are in no worse position than if, in ignorance of its existence, there had been a failure to enter any objection before the jury were sworn. I think the defect in the *venire* is a merely irregularity—*Vawter's Case*, 87 Va. 245—a naked technicality which did no harm, and could by possibility do no harm, to the prisoners. I think every man is entitled to have all the safeguards which the law provides thrown around him when he is called upon to answer at the bar of justice. He should have an impartial jury, and, if improper evidence is introduced, and improper instructions are given, he should have a new trial, if convicted; but when the law of the land has been complied with in all matters of substance by the trial courts, their judgments should not be reversed for a mere dry, barren, technical error. Such judgments (I speak with all respect for the court, and the learned judge who prepared its opinion) impair and undermine confidence in the law as a rational rule of conduct, and tend to encourage resort to tumultuary and violent methods for the punishment of crime which all deplore as a blot upon our civilization.

*Reversed.*