𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## STAPLETON V. COMMONWEALTH.

September 19, 1918.

1. HOMICIDE — *Murder in First Degree — Previously Existing Grudge.*—A homicide in execution of a previously existing grudge, and pursuant to a previously declared purpose, is murder in the first degree.

2. HOMICIDE—*Instructions Read As a Whole—Burden of Proof—Previously Expressed Grudge—Case at Bar.*—In the instant case the court instructed the jury, at the request of the Commonwealth, that if accused killed deceased in execution of a previously existing grudge, and pursuant to a previously declared purpose, the homicide was murder in the first degree. It was objected to this instruction that it failed to place upon the Commonwealth the burden of proving the existence of the grudge and the declared purpose to kill, and, further, ig-nored the defendant's theory of the killing. The instructions given upon the trial fully and fairly presented to the jury the respective theories and contentions of the Commonwealth and the accused. Under the familiar rule applying to both civil and criminal cases, instructions are to be read as a whole. When so read in this case, the alleged defects in the Commonwealth's instruction in question disappear. Instruc-tions given for the defendant, in no way conflicting with those given for the Commonwealth, not only presented every aspect of the defense relied upon, but repeated and empha-sized the burden upon the Commonwealth to prove, to the ex-clusion of all reasonable doubt, every element necessary to a conviction under the indictment.

3. HOMICIDE—*Threats—Uncommunicated.*—On a trial for homicide the jury were instructed, at the request of the Commonwealth, that threats made by the deceased against the prisoner were to be received with great caution, and it must be shown that the threats were communicated to the prisoner prior to the killing, before they could be considered as affording any justification of the homicide. The jury were also instructed, at the request of the accused, that if threats were made by

104

deceased against defendant, such threats are evidence to be considered by the jury in determining the reasonableness and *bona fides* of the defendant's plea of self-defense and of his belief that the deceased meant to kill or do him some serious bodily harm.

*Held:* That the first of these instructions stated the law correctly, and if it be conceded that the second was correct, it was not in substantial conflict with the first. But the Supreme Court of Appeals did not find it necessary to decide whether the second instruction was right, and expressed no opinion when, if ever, uncommunicated threats are admissible in evidence.

4. HOMICIDE—*Murder—Malice—Accused Previously Arming Himself.*—On a trial for homicide, the court instructed the jury that a person reasonably apprehending attack has a right to arm himself for his necessary self-defense, and also that a mortal wound given with a deadly weapon in the previous possession of the slayer, without any or upon slight provocation, is *prima facie* wilful and premeditated killing. These two instructions were given upon opposing theories, and there was no prejudicial conflict between them.

5. HOMICIDE—*Murder—Malice—Accused Previously Arming Himself.*—On a trial for homicide, when the court told the jury that the accused had the right to arm himself, it was not error to also instruct them that the use of the weapon was sufficient to raise a presumption of malice.

Error to a judgment of the Circuit Court of Scott county.

*Affirmed.*

The opinon states the case.

*W. S. Cox, G. Claude Bond* and *Coleman & Carter,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General, J. D. Hanks, Jr., Assistant Attorney-General,* and *F. Briggs Richardson,* for the Commonwealth.

KELLY, J., delivered the opinion of the court.

John W. Stapleton, indicted for the murder of John B. Shoemaker, was convicted of voluntary manslaughter, and brings the case here upon a writ of error.

The evidence, which was conflicting, need not be reviewed in detail. The deceased, who was unarmed, was shot to death by the accused under circumstances which, according to the testimony for the Commonwealth, fully warranted the verdict. The accused gave a wholly different version and one which, if true, would have entitled him to acquittal on the ground of self-defense. His counsel practically concede that the verdict of the jury conclusively settles this conflict against him in this court; but it is insisted that there was error in the instructions for which the judgment should be reversed.

Instruction No. 9, given for the Commonwealth and assigned as error, was as follows: "That if the jury believe from the evidence that previous to the time of the killing there was a grudge on the part of the prisoner towards the deceased, and that the prisoner had previously declared his purpose to kill the deceased or inflict upon the deceased serious personal hurt if the deceased interfered with him, and that he killed the deceased because of it in pursuance of such declared purpose on the grudge aforesaid, then such killing was wilful, deliberate, and premeditated, and is murder in the first degree."

There was no error in this instruction. It is plain and settled law that a homicide in execution of a previously existing grudge, and pursuant to a previously declared purpose, is murder in the first degree. *Gray's Case* (Instruction No. 2), 92 Va. 773, 22 S. E. 858. This proposition is not, as we understand, controverted, but it is urged that the instruction in question fails to place upon the Commonwealth the burden of proving the existence of the grudge and the declared purpose to kill, and, further, ignores the defendant's theory and narrative of the killing.

There were thirty-one instructions given upon the trial—nineteen for the Commonwealth and twelve for the defendant. These instructions fully and fairly presented to the jury the respective theories and contentions of the Commonwealth and the accused. Under the familiar rule applying to both civil and criminal cases, instructions are to be read as a whole. When so read in this case, the alleged defects in the Commonwealth's instruction No. 9 disappear. Instructions given for the defendant, in no way conflicting with those given for the Commonwealth, not only presented every aspect of the defense relied upon, but repeated and emphasized the burden upon the Commonwealth to prove, to the exclusion of all reasonable doubt, every element necessary to a conviction under the indictment.

The next objection urged against the instructions arises out of an alleged inconsistency between No. 11, given for the Commonwealth, and No. 9, given for the defendant. These instructions, in the order just named, were as follows:

No. 11. "The court tells the jury that evidence of threats made by the deceased against the prisoner, are to be received by them with great caution; and although such threats may be proved to have been made, yet, it must be shown to the satisfaction of the jury that these threats were communicated to the prisoner prior to the killing, before they can be considered as affording any justification of the homicide."

No. 9. "The court further tells the jury that although mere threats do not of themselves excuse a homicide, yet, if they believe from the evidence that threats were made by the deceased against the defendant, such threats are evidence to be considered by the jury in determining the reasonableness and *bona fides* of the defendant's plea of self-defense and of his belief that the deceased meant to kill or do him some serious bodily harm."

The first of these instructions unquestionably stated the law correctly. *Lewis* v. *Commonwealth* (Instruction No. 4), 78 Va. 733; and if it be conceded that the second was correct, it was not in substantial conflict with the first. The accused had introduced proof of certain threats against him by the deceased. These threats had not been communicated to the accused at the time of the homicide. They were offered on the theory that they would throw light upon the mental attitude of the deceased and thus enable the jury to better weigh the testimony of the accused in support of his claim of self-defense. There is, of course, no contention that these uncommunicated threats could possibly have influenced the prisoner at the time of the shooting. If admissible at all, they were so only because they might have tended to corroborate the prisoner in his statement as to the manner and apparent purpose of the deceased, and thus tended to establish the good faith of the defendant's contention that he acted in self-defense. The instruction dealt only with this aspect of the case. The evidence of the uncommunicated threats had already been admitted; the instruction as asked by the prisoner was given; and he thus got the full benefit of his contention in this respect. The court was clearly right in giving instruction No. 11 for the Commonwealth, and it is unnecessary to decide whether instruction No. 9 for the defendant was also right. The defendant certainly got all that he was entitled to in this regard, and we may very well say, as did Judge Riely in *Gray's Case, supra,* that " any discussion of the important question, when, if ever, uncommunicated threats are admissible in evidence, would be out of place." The question is discussed in Wigmore on Evidence, secs. 110 and 247, but has not, we believe, been passed upon by this court.

On behalf of the Commonwealth, the court gave instruction No. 6, as follows: "That whoever kills a human being with malice aforethought is guilty of murder and that a

murder that is perpetrated by poison, lying in wait or any other kind of wilful, deliberate and premeditated killing, is murder in the first degree. That a mortal wound given with a deadly weapon in the previous possession of the slayer without any or upon slight provocation, is *prima facie* wilful, deliberate and premeditated killing, and throws upon the defendant the necessity of proving extenuating circumstances."

Counsel for the accused concede that this instruction is correct as an abstract legal proposition, but insist that it was wrong under the facts in the instant case, especially because of its alleged conflict with instruction No. 11, given for the defense, which was as follows: "The court further tells the jury that when a person reasonably apprehends that another intends to attack him for the purpose of killing him or doing him serious bodily harm, then such person has a right to arm himself for his own necessary self-defense."

These two instructions were given upon opposing theories, and it is clear under our decisions that there is no prejudicial conflict between them. With reference to the Commonwealth's instruction No. 6, it is sufficient to say that there is nothing in the facts of the case at bar to substantially distinguish it from the many homicide cases in which this court has approved similar instructions where the law of self-defense was invoked. The argument of counsel for petitioner seems to be that when the court told the jury that the accused had the right to arm himself it was error to also instruct them that the use of the weapon was sufficient to raise a presumption of malice, since no inference of malice would be drawn and no presumption arise from the use of any instrument which he had a legal right to have in his possession. This argument, however, is not new, and has been denied any force by the previous decisions of this court. *Honesty* v. *Commonwealth*, 81 Va. 283-292; *Jones* v. *Commonwealth*, 100 Va. 842, 41 S. E. 951.

There were other objections to the instruction, and there was also an assignment of error based upon the refusal of the court to grant a new trial for after-discovered evidence. We have carefully considered the questions thus raised. They are in no respect novel or new, and the action of the trial court thereon was so plainly right upon principle and precedent that we do not feel warranted in discussing them. Such a discussion could only result in a needless repetition of what this court has already often said, and a useless citation of perfectly familiar authorities.

The judgment complained of is affirmed.

*Affirmed.*