# Richmond

## G. D. KLINE v. COMMONWEALTH.

November 14, 1935.

Present, All the Justices.

The opinion states the case.

*Revercomb & Revercomb, R. C. Stokes* and *George W. Layman,* for the plaintiff in error.

*Abram P. Staples, Attorney-General, Edwin H. Gibson, Assistant Attorney-General (Joseph L. Kelley, Jr.,* on the brief), for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

G. D. Kline, the accused, brings error to a judgment of the Circuit Court of Alleghany county by which he was convicted of forgery and uttering a forged instrument and sentenced to the penitentiary for a period of three years.

Kline and a Mrs. M. E. Bell were jointly indicted upon an indictment which charges that they feloniously did forge and utter a certain deed purporting to be signed by F. M. Lowen, conveying certain lots situated in Covington, Virginia. Having elected to be tried separately, Kline was arraigned at the October, 1933, term of court, and upon his plea of not guilty, was tried by a jury which found against him the verdict of which he is here complaining.

The first assignment of error is that the trial court erred in overruling the objection of accused to the competency of seven jurors who stated, upon their *voir dire,* that they were residents of the town of Covington and lived within two miles of the court house of Alleghany county wherein the alleged offense was charged to have been committed.

Four of the jurors objected to were members of the jury which tried the accused. The record discloses that the *venire facias* issued for the summoning of the jury in

felony cases for the October term was not issued for the trial of the instant case, but was issued for the trial of another felony case.

The statute which accused contends was violated by the trial court in the selection of the jury panel is section 4895, which reads as follows:

"If there is drawn from the box the name of a person who has died, removed from the county or city or is related to the accused or to the prosecutor, or, in case of homicide, to the deceased, or who is known to the clerk or other persons attending the drawing, if the case be in a circuit court of a county, to live within two miles of the place where the crime is charged to have been committed, such name shall not be placed on the list as they are drawn, and when twenty-four names have been so placed the drawing shall cease, and a copy of said list shall at once be made and signed by the clerk and the persons attending the drawing, which copy shall be filed in the clerk's office."

In support of his contention that the two mile provision in the statute is mandatory and therefore establishes ground for the absolute disqualification of the jurors, accused relies upon *Whitehead* v. *Commonwealth,* 19 Gratt. (60 Va.) 640; *Jones* v. *Commonwealth,* 100 Va. 842, 41 S. E. 951, and cases cited; and Revisors' note to Code of 1919. The cases relied upon were decided before the enactment of the present statute and only in the Whitehead Case is the distance of a juror's residence from the place of the crime called in question.

In construing that section of the statute (Acts 1845-46), which directs that the writ of *venire facias* shall command the officers charged with its execution to summon twenty-four persons, freeholders of his county or corporation "who reside remote from the place where the offense is charged to have been committed," the court held that the direction was mandatory and not in violation of that provision of the Bill of Rights (Const. sec. 8) which declares that an accused is entitled to a speedy trial by an impar-

tial jury of his vicinage. It is to be observed that the language "who reside remote from the place where the offense is charged to have been committed" is not embodied in section 4895, nor is there any reference to its omission in the Revisors' note. In our view the present statute must be construed independently of the former constructions dealing with "remoteness," and without the aid of historical background.

Since the writ of error in the case at bar was granted, this court, at its September, 1935, term, has handed down its opinion in the case of *Clark McDaniel* v. *Commonwealth,* post, page 709, 181 S. E. 534, 539. In that case it was contended by the accused that the trial court committed error in refusing to sustain his motion to set aside the verdict of the jury which fixed his punishment, on a charge of larceny, at two years in the penitentiary. The basis of the assignment of error was that the panel was composed in part of a juror who resided within the two mile limit, which is allegedly inhibited by the statute. In the opinion, delivered by Mr. Justice Holt, it was held that the burden was upon the accused to show that the "clerk or other persons attending the drawing" knew at the time of the drawing that the person whose name was placed on the list lived within two miles of the place where the crime is charged to have been committed. In that case, as in the case at bar, no effort was made to show that the clerk was aware of the place of residence of the jurors. In affirming the judgment of conviction, this was said: "It will be observed that the statute tells us for example that the name of one who is related to the prosecutor shall not be placed on the list. This provision is unqualified and mandatory but the name of one who lives within the two mile limit is to be withdrawn only if that fact is known to the clerk or other person attending the drawing. The burden is upon the accused to show that it is so known, and this burden he has not borne."

The question under consideration, in our opinion,

is concluded by the decision of the *McDaniel Case,* and there is no merit in the assignment of error.

The second assignment of error is that the verdict is contrary to the law and the evidence and is without evidence to support it.

The case of the Commonwealth may be thus summarized: Felix M. Lowen, a successful business man of Covington, was the owner of the "Edgemont farm" which in the summer of 1927 he subdivided into building lots. On August 10, 1927, Lowen and wife conveyed to Mrs. M. E. Bell two lots at the price of $200 per lot; these lots were numbered 60 and 61, or 61 and 62, and the deed thereto was either prepared by Kline or by Mrs. Bell's daughter, under Kline's direction; shortly thereafter Mrs. Bell contracted to buy another lot from Lowen and a second deed was prepared by Kline, conveying not only the third lot, but the two lots theretofore conveyed were also named in this deed and the lots were described as lots 60, 61 and 62; this latter deed was recorded in September, 1928, while the first deed remained in the possession of Kline. In the year 1930 Lowen's wife obtained a divorce from him, but immediately after the divorce was granted the parties became reconciled and signified their intention of remarrying; however, before the expiration of the statutory period of six months, Lowen became an invalid and the remarriage was never consummated, though Mrs. Lowen continued to live in a separate apartment of the home and cared for Lowen until his death. Sometime prior to the death of Lowen, which occurred on October 13, 1932, Kline admittedly changed the deed of August 10, 1927, by erasing the lot numbers 60 and 61, or 61 and 62, and also erasing the word "two," denoting the number of lots conveyed, and inserting in lieu of the number "two" the word "four;" the date of the deed was not changed, the acknowledgment was unchanged and no new acknowledgment was appended. The deed remained in the possession of Kline who claimed that the changes were authorized by Lowen and that he was directed by

Lowen not to mention even to Mrs. Bell the fact of the new conveyance, though he claimed that the real basis for the conveyance was that Lowen was in love with Mrs. Bell. Four months after the death of Lowen this deed was offered by Kline for recordation, under circumstances which aroused the suspicion of the deputy clerk who reported the matter to the attorney for the Commonwealth. The evidence on this score is that when Kline presented the deed for recordation he urged that it be immediately spread upon the deed book and the original returned to him; the next day he visited the clerk's office and insisted that the deed be recorded "out of turn," and offered to pay the deputy clerk one dollar compensation for recording same; when the deed was finally recorded the original was taken in charge by the attorney for the Commonwealth; it was further shown that the spreading of the deed upon the deed book wholly eliminated any evidence of its changed condition. When informed by the attorney for the Commonwealth that he was holding the deed for investigation, Kline made no enquiry as to the investigation contemplated and in a few days thereafter he and Mrs. Bell were arrested. The record further shows that Kline has been in the real estate business for forty-three years; that he was a notary public, an examiner of titles, prepared deeds for clients and had been connected with the recordation of approximately a thousand deeds and deeds of trust.

In view of the jury's verdict on the conflict of evidence, it is conclusively shown that Kline, a divorced man, and Mrs. Bell, a married woman, had been living in open adultery since the year 1918. Notwithstanding the claim of Kline that the changes which conveyed to Mrs. Bell property of the value of $5,000 were made by the direction of Lowen, it was proved by the Commonwealth that Kline, apparently acting as agent for his nephew, prepared and took the acknowledgment of a deed of trust from Mathew Lowen which covered the self-same lots conveyed to Mrs. Bell. It was further shown that Kline, a short time after

the death of F. M. Lowen, endeavored to purchase the interest of several of the heirs in their father's estate, and failing in his undertaking, he produced for the first time the deed to Mrs. Bell.

In the face of such overwhelming proof of forgery and uttering of a forged instrument the jury has dealt leniently with the accused.

It also appears from the records of this court, of which judicial notice will be taken, that Mrs. Bell, who was jointly indicted with Kline, has been tried and convicted and her petition for a writ of error has been refused.

There are other assignments of error dealing with the admission and exclusion of evidence and the giving and rejection of instructions. A careful consideration has been given these assignments and our conclusion is that they are without merit.

In our opinion no other than a verdict of guilty could have been properly returned in this case, and therefore, the judgment of the trial court will be affirmed.

*Affirmed.*