COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Frank
Argued at Alexandria, Virginia


DORELL PERCELL TAYLOR
                                              OPINION BY
v.    Record No. 1118-99-2        JUDGE ROBERT P. FRANK
                                        SEPTEMBER 26, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Robert W. Duling, Judge

            Steven D. Benjamin (Betty Layne DesPortes;
            Benjamin & DesPortes, P.C., on briefs), for
            appellant.

            John H. McLees, Jr., Senior Assistant
            Attorney General (Mark L. Earley, Attorney
            General, on brief), for appellee.


     Dorell Percell Taylor (appellant) appeals his convictions, by

a jury, of first degree murder and use of a firearm in the

commission of murder.  On appeal, he contends the trial court

erred in:  1) requiring defense counsel to call a witness on

behalf of the defense, which was contrary to counsel's judgment;

2) admitting the hearsay statement of the victim; and 3) finding

the evidence sufficient to support the convictions.  We disagree

and affirm the trial court's judgment.

                          I.   BACKGROUND

     On April 8, 1997, Richmond Police Officer John Sheppard

found Martin Scott, Jr. (victim), lying in a fetal position in

the back of a truck.  As Officer Sheppard approached the victim,

he noticed the victim was covered in blood with an obvious

gunshot wound to the mouth and head. A lot of blood was present in the bed of the truck. Officer Sheppard testified that when he saw the victim, he knew the victim was going to die. Officer Sheppard identified himself and told the victim he was going to die. The victim was able to uncurl slightly but did not reply. Officer Sheppard again told the victim he was going to die and, this time, asked the victim who shot him. The victim replied almost immediately by saying either the name "Dorell" or the name "Torell." Officer Sheppard could not tell which name was spoken because the victim's mouth was full of blood. The victim was gurgling and struggling to breathe. When asked where "Dorell" or "Torell" lived, the victim gestured with his hand in a southerly direction. When Officer Sheppard asked the victim if he was gesturing toward Rosewood Avenue, the victim nodded his head affirmatively. Officer Sheppard testified that, at this point, it appeared the victim could no longer speak. The victim died after paramedics took him to the hospital.

Frank James Ford owned the truck in which the victim was found. Ford testified he loaned his truck to appellant on April 7, 1997, for a couple of hours in exchange for drugs.

Veronica Blunt, the victim's neighbor and friend, was upstairs in the victim's house on April 7, 1997. In addition to the victim, Mario Rogers and a man named Russ also were in the house. As Blunt came down the stairs, she heard a man demanding cocaine and money. As she neared the bottom of the steps, she saw appellant, who had a gun, standing in front of the victim. She also saw appellant point the gun twice at the victim. Blunt then fled the victim's house for her own home. Upon realizing

the doors to her home were locked, she climbed a clothesline pole in order to reach her upstairs back porch. As she climbed, she heard gunshots and heard the victim run out his back door calling out. She then heard the victim at her front door screaming for help. Blunt finally got into her house, calmed her elderly mother, and then went to the front door, but the victim was no longer there. Blunt ran to her bedroom window, looked out, and saw the victim lying in the truck. She called 911. When the police arrived, Blunt told them the victim had awoken her by his calls for help. She also told a police detective that she could not identify the victim and she stated she could not identify the shooter when the police showed her a photo spread. Later, Blunt told appellant's former attorney that she could not identify the person who shot the victim, and she told the Commonwealth's attorney she could not identify the murderer. Blunt testified she did not provide the police with information about the shooting because she was afraid appellant would kill her.

Police investigators found blood and bullet marks throughout the victim's house and garage. Blood also was found on the stoop of Blunt's house.

During his defense, appellant presented two witnesses who testified they heard gunshots at the victim's house and then saw Mario Rogers, not appellant, running from the house. Antonio Williams, a friend of appellant and a convicted felon, testified, that after hearing shots fired from the victim's house, he saw a man named "Mario" leave the house with a gun. Elliott Haynes, also a convicted felon, testified he heard shots coming from the victim's house and saw Mario Rogers running out of the house.

- 3 -

During the trial, the defense attorney informed the court that she and appellant were having a difference of opinion as to whether Mario Rogers should be called as a witness for the defense. The trial court directly questioned appellant about his desire to call Rogers as a witness. Appellant indicated he knew his attorney did not want to call Rogers to testify but that he wanted to call Rogers as a witness. The trial court then instructed appellant's attorney to call the witness. Defense counsel responded, "Yes, sir," and called Rogers as the defense's next witness.

Rogers testified he was in the victim's house the night the victim was shot but did not see the shooter. Rogers denied having a gun the night the victim was killed and stated he did not kill the victim. Rogers testified he was with the victim earlier in the day when appellant asked the victim for money. The victim gave appellant $75, and appellant left the house. A few hours later, when appellant returned to the house and demanded more money, the victim replied he did not have the money. Appellant told Rogers not to be there when he returned. Rogers tried to exit through the front door, but saw appellant going to the truck. Rogers stated that he went out the back door and appellant re-entered the house through the front door. As Rogers fled the house, he heard shots being fired and saw appellant leave the house with a gun.

## II.  ANALYSIS

Appellant first contends the trial court erred in requiring his trial counsel to call a witness on behalf of the defense, despite counsel's opinion that the witness should not be called.

- 4 -

At trial, defense counsel informed the trial court that she and appellant had a difference of opinion about whether to call Mario Rogers as a witness for the defense and was at a loss as to whose rights were superior. The trial court asked appellant if he wanted to call Rogers, and appellant answered in the affirmative. The trial court also asked appellant if his counsel had advised him that Rogers should not be called as a witness. Appellant indicated his counsel had advised him not to call Rogers, but, despite his attorney's opinion, he wanted to call Rogers. The trial court then instructed defense counsel to call Mario Rogers. Defense counsel responded, "Yes, sir," and did not object to the trial court's directive that she call Rogers as a witness.

We find that appellant is procedurally barred from raising this issue on appeal because his counsel did not object to the trial court's directive to call Rogers as a witness, and, therefore, did not properly preserve the issue for appeal. See Rule 5A:18.

Appellant next contends the trial court erred in admitting the victim's hearsay statement as a dying declaration.

> Under this exception, dying declarations are admissible evidence in homicide cases if they were made when the declarant was "under a sense of impending death, and without any expectation or hope of recovery. Whether so made or not, is a preliminary question to be determined by the court on all the circumstances of the case." Bull v. The Commonwealth, 55 Va. (14 Gratt.) 613, 620 (1857). The fact that the declarant was conscious of his condition "may be established otherwise than by the statements of the decedent: as by the character and nature of the wound, his appearance and conduct, etc." Hill v. The Commonwealth, 43 Va. (2 Gratt.) 594, 608 (1845).

- 5 -

Clark v. Commonwealth, 235 Va. 287, 291, 367 S.E.2d 483, 485 (1988).

While the victim did not state he was dying, he had been shot in the mouth and head. In fact, the officer testified that when he saw the victim's wound he knew the victim was going to die. The victim was lying in a fetal position and was covered in blood. When the officer approached and began talking to him, he was able to uncurl slightly but never stretched completely out. He also did not sit up. The officer told the victim he was going to die. The bed of the truck contained a lot of blood. The victim was gurgling and struggling to breathe and his mouth was full of blood. He was unable to speak clearly because of his wound and the blood in his mouth. When the officer asked him where "Dorell" or "Torell" lived, the victim was no longer able to speak. Instead, he waved his hand in a southerly direction. When the officer asked him if he meant toward Rosewood, the victim did not speak but nodded his head.

We hold that the evidence supports the trial court's finding that the victim was under a sense of impending death when he spoke because he had been shot in his mouth and head, he was lying in a fetal position, his clothing was covered in blood, the truck had a lot of blood in it, the officer told him he was going to die, he was struggling to breathe, he was unable to sit up or stretch out, and his mouth was full of blood. Further, after answering the officer's initial question, he was not able to speak. He motioned and nodded his head. We find this evidence supports the trial court's conclusion that the victim was conscious of his condition.

Appellant argues that for the dying declaration exception to apply there must be some evidence of the victim's subjective belief that his death is imminent. Appellant relies on <u>Hall v. Commonwealth</u>, 12 Va. App. 198, 204, 403 S.E.2d 362, 365 (1991) (declarant, who was shot on Christmas Eve, "repeatedly told his wife that he would not see Christmas," told her she and his child would have to carry on without him, asked to talk to a minister, and told the minister he wanted to be saved); <u>Batten v. Commonwealth</u>, 190 Va. 235, 239, 56 S.E.2d 231, 233 (1949) (declarant said he was dying and would not live until the morning and then asked his sister to take care of his mother); <u>Thomas v. Commonwealth</u>, 183 Va. 501, 507, 32 S.E.2d 711, 714 (1945) (declarant said he was dying, "'this will be the last of me,'" and "'this is the end'"); <u>Mitchell v. Commonwealth</u>, 178 Va. 407, 414, 17 S.E.2d 370, 372-73 (1941) (after a doctor told the declarant he would not get well, the declarant also said he did not think he would get well); <u>Waller v. Commonwealth</u>, 178 Va. 294, 306, 16 S.E.2d 808, 813 (1941) (declarant said he was going to die and was not going to live); and <u>O'Boyle v. Commonwealth</u>, 100 Va. 785, 793, 40 S.E. 121, 124 (1901) (when someone asked the declarant if she realized her condition, declarant said she did). Appellant argues the victim did not respond to the officer's statement that he was going to die and did not evince any awareness that he had a fatal wound.

While <u>Hill</u> involved statements made by the declarant, such as "it will soon be over with me," <u>Hill</u>, 43 Va. at 609, the Supreme Court of Virginia, in <u>Clark</u>, reiterated the <u>Hill</u> standard that imminent death may be established by "'the character and nature of

- 7 -

the wound, his appearance and conduct.'" <u>Clark</u>, 235 Va. at 291, 367 S.E.2d at 485. The cases appellant relies upon are consistent with <u>Hill</u>, but the facts of this case also fall within the <u>Hill</u> standard. <u>Hill</u> and the cases cited by appellant require the declarant to be under a sense of impending death and set forth the mode of proving the declarant's sense of impending death. <u>Hill</u> allows circumstantial evidence to prove the requirement. The other cases involve the declarant's statements as the mode of proving the requirement. We find no conflict between the cases.

Finally, appellant contends the evidence was insufficient to support his convictions.

> When a defendant challenges on appeal the sufficiency of the evidence to sustain his conviction, it is the duty of an appellate court to examine the evidence that tends to support the conviction and to permit the conviction to stand unless the conviction is plainly wrong or without evidentiary support.

<u>Commonwealth v. Presley</u>, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998) (citations omitted).

"The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." <u>Crawley v. Commonwealth</u>, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999) (citing <u>Long v. Commonwealth</u>, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989)).

In this case, the testimony by Blunt and Rogers and the victim's dying declaration established that appellant was the person who shot the victim. The trial court was entitled to reject the testimony of Haynes and Williams. We, therefore, find

the trial court did not err in finding the evidence sufficient to support the convictions.

For these reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>