STATE OF WEST VIRGINIA *v.* E. R. SUMMERS

(No. 8421)

Submitted September 30, 1936. Decided December 15, 1936.

*H. W. B. Mullins* and *S. P. Riddle*, for plaintiff in error.
*Homer A. Holt*, Attorney General, and *Kenneth E. Hines*, Assistant Attorney General, for the State.

LITZ, JUDGE:

The defendant, E. R. Summers, was tried, convicted and sentenced to life imprisonment upon an indictment charging him with the murder of Oley Cobb.

The homicide occurred about 1:30 A. M. July 30, 1935, in a small one-room building in Boone County used by Summers as a confectionery and beer parlor. The structure, which stood near the public road, was arranged with two doors: a front door facing the road and a side door leading out onto a board walk about three feet high and connecting with the porch of a residence immediately to the rear, in which he, his wife and an infant child lived. According to the evidence of the defense, the deceased, under the influence of liquor and carrying a black jack, frequented the confectionery and residence of the defendant from early in the night up to the time of the shooting, accompained at times by Leck Snodgrass, who was also intoxicated and armed with a revolver; during the time Cobb, in several instances, assaulted Mrs. Summers apparently with the purpose of raping her; threatened her life and the life of defendant; by flourishing the blackjack in a menacing manner compelled defendant to deliver beer to him and Snodgrass without compensation. A short while before the tragedy, Cobb and Snodgrass became involved in an altercation with Pat Barker in the confectionery. The three left the building by the front door apparently for the purpose of a physical encounter. Seemingly because of the threatening attitude of Cobb and Snodgrass, Barker soon returned to the building. The front door was then locked from the inside to keep Cobb and Snodgrass out. Cobb committed other acts of violence calculated seriously to disturb the peace and habitation of defendant and his wife, of which as well as the alleged acts and threats by Cobb already detailed, defendant was cognizant. Upon being informed, while leaving his residence to close the confectionery for the night, that Cobb and Snodgrass were nearby, armed with guns, defendant secured a shotgun and started to the confectionery. As he came out of the house, Cobb climbed

upon the board walk and followed Mrs. Summers into the confectionery, where he caught her with his right hand and raised the blackjack over her with his left hand. As she broke away from him, defendant fired through the screen of the side door, striking Cobb in the left shoulder, causing almost instant death.

There is little, if any, conflict between the testimony for the defendant and the evidence of the state, except as to the situation at the time of the shooting. The witnesses for the state testify that Cobb came into the confectionery through the side door without using force toward anyone; that Mrs. Summers was at the time behind the counter waiting on the customers; and that Cobb did not get within reach of her. The blackjack was strapped to the left wrist of Cobb at the time he was shot. The arm of defendant had been broken and was then being supported by a cast.

The assignments of error are: (1) that the verdict is contrary to the law and the evidence; (2) that improper instructions were granted at the instance of the prosecution; (3) that the court refused a proper instruction offered by defendant; and (4) that the trial judge committed error by improperly ruling, commenting on the evidence in the presence of the jury and examining the witnesses.

First: In view of the conflicting evidence as to the situation at the time of the shooting, the jury, in our opinion, acted within its province in considering whether defendant acted deliberately and premeditatedly, and that the instructions presenting the theory of the state are correct except as they limit the issues to murder and justifiable homicide and fail to consider the evidence of provocation occasioned by the previous conduct of Cobb. *State* v. *Garner*, 97 W. Va. 222, 124 S. E. 681.

Second: Instruction No. 3, granted at the instance of the state, reads: "The Court instructs the jury that in determining whether the defendant at the time he shot the deceased was acting in the lawful defense of his wife the jury must believe from the evidence in the case that the circumstances at the time surrounding the prisoner

were such as gave him good cause to believe, and did believe, that his wife was in imminent danger of death or great bodily harm at the hands of the deceased, and it was necessary to fire said shot to protect her from such danger. The acts and conduct, if any, of the deceased at the time and prior to the shooting may be considered by the jury in determining whether the defendant had such cause to believe and fired said shot under such belief, but no acts or conduct of the deceased prior to that time would excuse the defendant for shooting the deceased." This instruction, as will be noted, permitted the jury to consider the conduct of the deceased prior to the shooting only for the purpose of determining whether the defendant had cause to believe and did believe at the time of the shooting that his wife was in imminent danger of death or great bodily harm at the hands of the deceased. The court, by so limiting the jury in its consideration of the evidence, committed plain error. Accepting as true the evidence of the state relating to the situation at the time of the shooting, the jury should have been permitted to consider the evidence of the previous conduct of deceased for the purpose of determining whether the homicide was murder or manslaughter. *State* v. *Clifford,* 59 W. Va. 1, 52 S. E. 981. In a trial for murder, the presumption of malice from the use by the accused of a deadly weapon in producing death may be rebutted by evidence of provocation on the part of the deceased calculated to engender great passion or fear in the mind of the slayer. *State* v. *Cassim,* 112 W. Va. 92, 163 S. E. 769.

Third: The court refused an instruction offered by defendant which would have told the jury that one who has been threatened with murderous assaults and who has reason to believe that such assaults will be made, may arm himself for defense and in such case, no inference of malice can be drawn from the fact of preparation for it. This instruction should have been given. *State* v. *Clark,* 51 W. Va. 457, 41 S. E. 204; *State* v. *Hardin,* 91 W. Va. 149, 112 S. E. 401.

Fourth: It would necessitate an undue extension of

this opinion to consider in detail the numerous questionable acts, comments and rulings of the *nisi prius* court during the progress of the trial specified in the assignments of error. A consideration of the record as a whole, however, convinces one that the undue questioning of the witnesses, the numerous gratuitous rulings and comments by the trial court tended to trammel the witnesses for the defense, discredit their testimony and build up the case for the state in the minds of the jury in violation of the basic principle, under our practice, governing trial by jury. "In the trial of a criminal case * * * the court should be extremely cautious not to intimate in any manner, by word, tone, or demeanor, his opinion upon any fact in issue." *State* v. *Austin*, 93 W. Va. 704, 117 S. E. 607, 608. Accord: *Ball* v. *Wilson*, 98 W. Va. 211, 127 S. E. 22; *State* v. *Hively*, 103 W. Va. 237, 136 S. E. 862; *State* v. *Waters*, 104 W. Va. 433, 140 S. E. 139. *State* v. *Songer*, 117 W. Va. 529, 186 S. E. 118. "Under the practice in this state, the trial judge should express no opinion on the testimony, either directly or by innuendo." *State* v. *Hively*, 103 W. Va. 237, 136 S. E. 862.

For the reasons stated, we are of the opinion to reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*