# Richmond

CASSELL BEVLEY V. COMMONWEALTH OF VIRGINIA.

June 10, 1946.

Record No. 3097.

Present, All the Justices.

The opinion states the case.

*Royston Jester, Jr.*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *V. P. Randolph, Jr., Assistant Attorney General*, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The accused was arraigned and, upon his plea of not guilty was tried by a jury on this indictment:

"Commonwealth of Virginia,
   "County of Campbell, to-wit:
   "The Grand jurors of the Commonwealth of Virginia, in and for the body of the County of Campbell, and now at-

tending the said Court, upon their oaths present that Cassell Bevley on the 5th day of June, 1945, in the said County of Campbell, unlawfully and feloniously did kill and murder one Walter Gladding, against the peace and dignity of the Commonwealth of Virginia."

The trial resulted in a verdict finding accused not guilty of murder, but finding him guilty of voluntary manslaughter, and fixing his punishment at confinement in the penitentiary for a period of five years.

The motion filed by the accused, to set aside the verdict because contrary to the law and the evidence, was overruled by the trial court and judgment was pronounced in accordance with the verdict returned by the jury.

This writ of error challenges the action of the court in entering the judgment complained of.

The case displayed by the record may be thus summarized: Cassell Bevley, the accused (colored), was the owner and operator of a club known as the "Happy Land Lake," situated in Campbell county. On the night of June 4, 1945, a negro sailor named Frank Johnson was given a party by his friends at the resort. The deceased, Walter Gladding, a lieutenant in the United States Army; also colored, though not invited to attend the party, accompanied his friend George Harris (who was invited) to the resort and arrived there at approximately 12:45 a. m. Before leaving the home of Harris, Gladding and Harris obtained a fifth or a quart of whiskey, and Harris put a pistol in his pocket. On the way to the resort the whiskey was consumed. When they arrived at the club, Harris was admitted. After a period of fifteen minutes had elapsed, Gladding knocked upon the door and inquired for Harris; he was, thereupon, admitted and immediately began to push Frank Johnson out of his way, remarking, in substance, "Nobody is going to do anything to George Harris." He became disorderly and began to indulge in profane language, whereupon Harris told Gladding he (Gladding) had not been invited there and

to come and go with him. Gladding refused to leave the resort and a fight took place between Gladding and Bevley. After the two were separated by some of the guests, Gladding was forcibly ejected by Harris and others from the house. When he reached the outside, according to the testimony of Harris, Gladding said to Harris, "You got a gun. Give me the damned gun and I will kill every damned * * * down here." Harris refused to give Gladding the pistol and he tried to secure it from Harris by force. While Harris and Gladding were scuffling over the pistol, Bevley came out of the house, went to his car which was parked upon the premises and secured a pistol.

From this point, immediately prior to and at the time of the shooting, the evidence is in conflict. This conflict in the evidence renders it unnecessary to detail the conflicting claims of the Commonwealth and the defendant as to who committed the first assault.

It is assigned as error that the verdict of the jury is contrary to the evidence adduced, and therefore, the verdict should be set aside and a new trial awarded.

In view of our ultimate conclusion that the case should be reversed for the reason that the court committed error in refusing an instruction offered by the defendant, it would be improper to enter upon a discussion as to the sufficiency of the evidence introduced by the Commonwealth to sustain the verdict.

Upon the motion of the Commonwealth, the court granted six instructions. These instructions dealt with the definition of murder in the first degree, murder in the second degree, voluntary manslaughter, the doctrine of self-defense and the implication of malice from the use of a deadly weapon by the accused. Since the accused was tried upon an indictment containing only one count, and was found guilty, not of murder but of voluntary manslaughter, this action of the court in defining the degrees of murder becomes immaterial upon a new trial, for the reason that section 4918 of the Code (Michie's) provides: "If the verdict be set

aside and a new trial granted the accused, he shall not be tried for any higher offense than that of which he was convicted on the last trial."

It is next assigned that the court erred in refusing to give instruction D offered by the accused.

This assignment of error is without merit.

Instruction D dealt with the doctrine of self-defense and was but a reiteration of the doctrine of self-defense embodied in instructions A, B and C, given on the motion of accused.

This court has repeatedly held that it is not only bad practice but wholly unnecessary to give further instructions on a subject fully covered by other instructions. A multiplicity of instructions upon a given subject is not only confusing to a jury, but is utterly devoid of enlightenment. See *Thomas* v. *Commonwealth*, 183 Va. 501, 32 S. E. (2d) 711.

It is assigned as error that the court erred in refusing to give, upon motion of the accused, instruction "F":

"The Court further instructs the jury that when a person reasonably apprehends that another intends to attack him for the purpose of killing him or doing him serious bodily harm, then such person has a right to arm himself for his own necessary self-protection, and in such case, no inference of malice can be drawn from the fact he prepared for it."

It was the contention of the Commonwealth in the trial of the case that the accused was guilty of murder either in the first or second degree. This contention is fortified by the giving of three instructions which emphasized the doctrine pertaining to malice.

The dominant instruction given by the court on this phase of the case is as follows:

"The Court instructs the jury that the law presumes that a person using a deadly weapon to kill another acted with malice, and the burden is thrown upon the person so using a deadly weapon to overcome this presumption. But if upon a consideration of all the evidence you have a reasonable doubt as to whether he acted with malice or not you should not find him guilty of murder."

The contention of the accused is, that having been threatened by the deceased with death or serious bodily harm, he had the legal right to arm himself in order to combat the execution of the threat made against him.

It is a fundamental doctrine that a person who has been threatened with death or serious bodily harm and has reasonable grounds to believe that such threats will be carried into execution, has the right to arm himself in order to combat such an emergency. Whether the threats were made, or the accused had reason to believe they would be carried into execution, were questions to be determined by the jury. However, when a jury is told that the law presumes that a person using a deadly weapon to kill another acts with malice and throws upon the accused the burden of disproving malice, then the accused is entitled as a matter of law to have the jury instructed that he has overcome the presumption, if they believe the evidence offered in his behalf.

In *Stapleton* v. *Commonwealth*, 123 Va. 825, 830, 96 S. E. 801, it appears that the trial court gave this instruction:

"The court further tells the jury that when a person reasonably apprehends that another intends to attack him for the purpose of killing him or doing him serious bodily harm, then such person has a right to arm himself for his own necessary self-defense."

So far as we are advised, the rule there stated has not been questioned in Virginia until presented in this case.

In *State* v. *Summers*, 118 W. Va. 118, 188 S. E. 873, 875, in passing upon the identical question herein involved, Judge Litz said:

"The court refused an instruction offered by defendant which would have told the jury that one who has been threatened with murderous assaults and who has reason to believe that such assaults will be made, may arm himself for defense and in such case no inference of malice can be drawn from the fact of preparation for it. This instruction should

have been given. *State* v. *Clark*, 51 W. Va. 457, 41 S. E. 204; *State* v. *Hardin*, 91 W. Va. 149, 112 S. E. 401."

The judgment is reversed for the refusal of the trial court to give defendant's instruction F and the case is remanded for a new trial.

*Reversed and remanded*