Richmond

HOWARD EUGENE JORDAN

v.

COMMONWEALTH OF VIRGINIA

March 2, 1979.

Record No. 780524.

Present: All the Justices.

R. R. Ryder for appellant.

Vera S. Warthen, Assistant Attorney General (Marshall Coleman, Attorney General, on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

On an indictment for malicious wounding, Howard Eugene Jordan was tried by a jury and was found guilty of the unlawful wounding of John H. Barrett, Jr. In accordance with the verdict the trial court sentenced Jordan to the state penitentiary for five years. We granted a writ of error limited solely to a consideration of the trial court's refusal to admit certain testimony concerning Barrett's reputation for violence.

On August 6, 1977, Barrett and a number of other persons were gambling in a residence located in Richmond. The defendant Jordan arrived on the scene around 1 a. m. Barrett testified that he had lost his money and therefore offered Jordan his place at the dice table. He said that when he was a little slow in moving, Jordan said to him, "[M]ove your monkey a. . out the way." Barrett stated that when Jordan addressed the same remark to him a second time, he asked the defendant, "[W]ho do you think you are that you can talk to people that way?", to which the defendant replied, "[Y]ou'll find out who I am." To this remark Barrett said he replied, "[I]f you are going to do something to me . . . you can forget it."

Barrett's testimony was that after this exchange of words, he forgot about the argument because "[T]here wasn't nothing to it." He said, however, that Jordan left and returned a few minutes later with a pistol. Barrett testified that the defendant walked up to him and said "[Y]ou say the same thing you said to me that you said before", and then threatened "to blow [Barrett's] m. . . . . f. . . . . head off". Barrett testified that he replied, "I didn't know you were that mad about this . . . [I]t ain't worth killing for." At this point Barrett said Jordan shot him twice, one bullet striking his arm and the other his mouth. The victim, who was unarmed, claims that he was seated at the time he was shot.

The defendant's version of the incident is that he and Barrett had had confrontations on previous occasions. He testified that he knew that he was "no match for him [Barrett]", and that he had heard Barrett "tell people he could take his fists and break people's jaws".

Jordan admitted arguing with Barrett on the night of the shooting. He said that he apologized three times and told the victim, "I'm very sorry that I said anything to you. You can have this spot right back there." Defendant said that he then left the house with the intention of going home; that after he left he "was going on about my business when all of sudden my mind told me to go back in there and to try to straighten this out because it's going

to start somewhere else and somebody is going to get into trouble. I had the pistol all the time. . . ." He testified that when someone opened the back door he entered with the gun at his side. With reference to the gun, defendant said, "I'm hiding it because I don't want him to sure enough, to get jumped, but I am thinking about protecting myself because, you know, if I come down wrong, he's going to jump me . . . [a]nd tear me to pieces if he gets his hands on me."

When asked why he had the gun, defendant answered, "I had the weapon by my side because of the fact that I know that if I go back in there talking to John, I can't reason with him, but I want to try to reason with him, and it's as simple as that. I'm not taking no chances with him because I have bad nerves, and I know damn near as well he's going to jump me."

The defendant testified that after he reentered the building, an acquaintance, John Bledsoe, told him, "[D]on't get in no trouble because you are getting married in two weeks, and it ain't worth it." Jordan said he replied to Bledsoe, "John, this man is looking for trouble" and that before he got the words out of his mouth Barrett jumped out of the chair, hit the gun and in some way got shot. Defendant admitted that prior to the shooting, John Bledsoe "tried to keep me under control", and that he said to Bledsoe, "I'm tired of this man keeping on bugging me. We've got to get some understanding."

Defendant testified that the shooting was an accident, saying, "[W]hen he leaped up on me, you understand that my reaction called for the gun to go right off at him, you know. I mean he caused himself to get shot like that in that incident." However, the defendant said that he resented being called a boy by Barrett, that "I'm not no boy like he called me. Both of us is men. I couldn't reason with him without a gun."

Samuel L. Jackson, who was at the scene, described Barrett as a big man. He testified that immediately before the shooting occurred Jordan said to Barrett, "Say what you said before", that Barrett's response to Jordan was, "[A]ll right, you got me now", after which Barrett got up and walked toward the defendant. Jackson said that when the first shot was fired the parties were so close together "they was almost kissing each other". However, John Bledsoe estimated that the parties were six feet apart when the gun went off. Bledsoe also testified that defendant's gun never left Jordan's side and at all times remained "pointed the way Barrett was sitting."

Counsel for defendant sought to introduce evidence of Barrett's reputation for violence. The trial court refused to admit such evidence upon the ground that Jordan repeatedly said that the shooting was an accident and was not done in self-defense.

It is well settled in Virginia that where an accused adduces evidence that he acted in self-defense, evidence of specific acts is admissible to show the character of the victim for turbulence and violence, even if the accused is unaware of such character. *Barnes v. Commonwealth*, 214 Va. 24, 197 S.E.2d 189 (1973); *Stover v. Commonwealth*, 211 Va. 789, 180 S.E.2d 504 (1971); *Randolph v. Commonwealth*, 190 Va. 256, 56 S.E.2d 226 (1949). We held in *Jones v. Commonwealth*, 196 Va. 10, 15, 82 S.E.2d 482, 485 (1954), that "[T]he evidence and inferences deducible therefrom may be such at times as to justify the submission of whether or not the killing was in self-defense, as well as whether or not it was accidental". However, the case under review is not such a case.

A review of the evidence discloses no overt act on the part of Barrett that would justify a plea of self-defense by the defendant. While there is evidence that prior to the night of the shooting Barrett and Jordan may have had several "confrontations", these confrontations were of little significance. Insults and threats may have been exchanged but no physical attacks had previously been made by either party on the other. On the night of the shooting the parties again had "words" but no fight resulted therefrom. It is clear from defendant's testimony that after he had left the house in which the gambling was taking place, his resentment of Barrett prompted him to return with a loaded revolver and to address a taunting remark to his victim. Jordan admitted that he needed the gun so that he could "reason" with Barrett.

Jordan went back into the dwelling from a place of safety with the avowed intention of having a further confrontation with Barrett. Barrett was unarmed and, prior to Jordan's appearance with the gun, made no aggressive gesture toward the defendant. It was the defendant who renewed the quarrel and who brought on the affray by his provocative act of pointing the pistol in Barrett's direction, an act most certainly calculated to precipitate the difficulty that ensued.

In *Sims v. Commonwealth*, 134 Va. 736, 115 S.E. 382 (1922), we applied the principle that a person cannot rely upon a plea of self-defense in a case of homicide or assault when he himself was the aggressor and wilfully brought on, without legal excuse, the necessity for the homicide or assault. There we said: "A man

cannot go a-gunning for an adversary and kill him on the first appearance of resistance, and rely upon the necessity of the killing as an excuse therefor." 134 Va. at 760, 115 S.E. at 390.

The conclusion is inescapable that in the instant case Jordan regarded the gun with which he was armed as the "equalizer" between himself and Barrett, a larger man, and that when he went into the building the second time he went "a-gunning" for his adversary.

Accordingly, we find no error in the action of the court in refusing to permit the defendant to introduce testimony regarding Barrett's reputation for violence.

The judgment of the lower court is

*Affirmed.*