COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Clements and Senior Judge Overton
Argued at Chesapeake, Virginia


REBECCA SCARLETT CARY

MEMORANDUM OPINION[*] BY
v.        Record No. 2031-03-1                     JUDGE LARRY G. ELDER
DECEMBER 21, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Charles D. Griffith, Jr., Judge

Joseph R. Winston, Special Appellate Counsel (Indigent Defense
Commission, on briefs), for appellant.

Steven R. McCullough, Assistant Attorney General (Jerry W.
Kilgore, Attorney General, on brief), for appellee.


Rebecca Scarlett Cary (appellant) appeals from her jury trial conviction for first-degree

murder and the use of a firearm in the commission of murder.  On appeal, she contends the court

committed reversible error by (1) commanding her, outside the presence of the jury, to compose

herself during a break in her testimony at trial; (2) refusing to allow her to offer testimony that

she acted in self-defense and to give her proffered jury instruction regarding same; (3) refusing

her proffered jury instructions on the right to arm, heat of passion and voluntary manslaughter;

and (4) concluding the evidence was sufficient to support her conviction for first-degree murder.

We hold appellant did not properly preserve her claim that the trial court abused its

discretion by directing her to compose herself.  We also hold that the evidence, viewed in the

light most favorable to the Commonwealth, was sufficient to support her convictions for

first-degree murder and the concomitant use of a firearm.  However, we hold the court's

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

exclusion of evidence of the victim's prior threats and violence toward her, coupled with its rejection of her jury instructions on self-defense, right to arm, voluntary manslaughter and heat of passion, constituted reversible error. Thus, we vacate her convictions and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

I.

A.

TRIAL COURT'S DIRECTION TO DEFENDANT TO COMPOSE HERSELF

A criminal defendant has a constitutional right to testify in her own behalf at trial. U.S. Const. amend. V; Va. Const. art. 1, § 8; see Code § 19.2-268.

> "A judge must not express or indicate, by word or deed, an opinion as to the credibility of a witness or as to the weight or quality of the evidence. Any question or act of the judge which may have a tendency to indicate his thought or belief with respect to the character of the evidence is improper, and should be avoided. The impartiality of the judge must be preserved in form and in fact."

Brown v. Commonwealth, 3 Va. App. 101, 106, 348 S.E.2d 408, 411 (1986) (quoting Jones v. Town of LaCrosse, 180 Va. 406, 410, 23 S.E.2d 142, 144 (1942)) (reversing and remanding for new trial based on court's conduct "in the presence of the jury"). "This prerogative of the jury is so jealously guarded that it is usually held to be reversible error for a judge to comment," in the presence of the jury, "on the weight of the evidence or the credibility of the witnesses." Charles E. Friend, The Law of Evidence in Virginia § 1.5, at 29 (6th ed. 2003).

Here, appellant objected "to the Court's comments [to Ms. Cary to make herself as calm as she was on the night of the killing] and the implication drawn therein," but she did not explain how those specific comments, made outside the presence of the jury, would improperly invade the province of the jury. She made specific objections to "other comments that the Court has made in the presence of the jury," but she does not challenge any of those "other comments" in this appeal. Not until this appeal did she claim the trial judge's instruction to her to compose

- 2 -

herself improperly interfered with her show of legitimate emotion while testifying and that this could have had a negative impact on the jury's perception of her credibility. The trial court also clearly did not perceive any attempt on appellant's part to register such an objection, for it noted repeatedly that it had "been very careful not to . . . say anything . . . in the presence of the jury that could effect the jury's decision in this case." Thus, appellant failed to preserve this objection for appeal under Rule 5A:18.

B.

EVIDENCE OF VIOLENCE AND JURY INSTRUCTIONS

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "A defendant is entitled to have the jury instructed only on those theories of the case that are supported by the evidence." Connell v. Commonwealth, 34 Va. App. 429, 436, 542 S.E.2d 49, 52 (2001). "[A]n instruction is proper only if supported by more than a scintilla of evidence." Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001). In reviewing a trial court's refusal to give a requested instruction, we view the evidence in the light most favorable to the proponent of the instruction. See Turner v. Commonwealth, 23 Va. App. 270, 275, 476 S.E.2d 504, 507 (1996), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997).

1. Self-Defense and Right to Arm

Settled principles provide that

> [a] criminal defendant may offer evidence regarding the victim's character for violence, turbulence, or aggression for two purposes: (1) to show "who was the aggressor" or (2) to show "the reasonable apprehensions of the defendant for his life and safety." However, it is well established that such evidence of the victim's character is admissible only when the defendant "adduces evidence

- 3 -

that he acted in self-defense." Jordan v. Commonwealth, 219 Va. 852, 855, 252 S.E.2d 323, 325 (1979); see also Burford v. Commonwealth, 179 Va. 752, 767, 20 S.E.2d 509, 515 (1942) (stating that evidence of a victim's character for violence "is admissible only when the defendant has interposed a plea of self-defense . . . , and when a proper foundation is laid by proof of some overt act justifying such defense"); Mealy v. Commonwealth, 135 Va. 585, 596, 115 S.E. 528, 531 (1923) (stating that evidence of the victim's "quarrelsome, dangerous, and ferocious" character was not admissible "because there was no foundation in the case for the theory of self-defense"); Harrison v. Commonwealth, 79 Va. (4 Hans.) 374, 379 (1884) (stating that evidence of the victim's "brutal and ferocious" character is inadmissible "where no case of self-defence has been made out"). If the defendant has established *prima facie* evidence of self-defense, then the evidence of the victim's character must also satisfy additional tests of relevance.

Canipe v. Commonwealth, 25 Va. App. 629, 640-41, 491 S.E.2d 747, 752 (1997) (quoting

Randolph v. Commonwealth, 190 Va. 256, 265, 56 S.E.2d 226, 230 (1949)) (citations omitted).

Self-defense is an affirmative defense. McGhee v. Commonwealth, 219 Va. 560, 562,

248 S.E.2d 808, 810 (1978).

A person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault. The privilege to use such force is limited by the equally well recognized rule that a person "shall not, except in extreme cases, endanger human life or do great bodily harm." Moreover, the amount of force used must be reasonable in relation to the harm threatened.

Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 25-26 (1989) (quoting

Montgomery v. Commonwealth, 98 Va. 840, 843, 36 S.E. 371, 372 (1900)) (citations omitted).

An assertion of self-defense to completely absolve a defendant of criminal responsibility

for a killing "'implicitly admits the killing was intentional and assumes the burden of introducing

evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'"

Sands, 262 Va. at 729, 553 S.E.2d at 736 (quoting McGhee, 219 Va. at 562, 248 S.E.2d at 810).

In these circumstances, self-defense requires proof of "a reasonable fear of death or bodily harm

- 4 -

based on an honest appraisal of the surrounding circumstances" and "an act by the victim which is taken by the defendant to signal the intent to inflict death or bodily harm, imminently, and a proportional response by the defendant." John L. Costello, <u>Virginia Criminal Law and Procedure</u> § 33.2-3, 33.2-4, at 433 (3d ed. 2002).

> The "bare fear" of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life. "There must [also] be some overt act indicative of imminent danger at the time." <u>Vlastaris v. Commonwealth</u>, 164 Va. 647, 652, 178 S.E. 775, 776 (1935). In other words, a defendant "must wait till some overt act is done[,] . . . till the danger becomes imminent." [<u>Id.</u>] at 652, 178 S.E. at 777. In the context of a self-defense plea, "imminent danger" is defined as "[a]n immediate, real threat to one's safety . . . ." <u>Black's Law Dictionary</u> 399 (7th ed. 1999). "There must be . . . some act menacing present peril . . . [and] [t]he act . . . must be of such a character as to afford a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution." <u>Byrd v. Commonwealth</u>, 89 Va. 536, 539, 16 S.E. 727, 729 (1893).

<u>Sands</u>, 262 Va. at 729, 553 S.E.2d at 736 (citations omitted).

Applying these principles in <u>Sands</u>, the Virginia Supreme Court held the threat posed by Sands's husband was not sufficiently imminent to entitle her to a jury instruction on self-defense. 262 Va. at 729-31, 553 S.E.2d at 736-37. The Court noted the evidence supported the conclusion that Sands, whose husband had beaten her daily for years during their marriage and did so repeatedly and severely throughout the day of the killing, "reasonably believed that she was in danger of serious bodily harm or death." <u>Id.</u> at 730, 553 S.E.2d at 737. However, it held as a matter of law that the threat he posed was not imminent because Sands shot her husband while he "reclin[ed] on [a bed], watching television [in another room]." <u>Id.</u> The Court emphasized that "[t]he requirement of an overt act indicative of imminent danger ensures that the most extreme recourse, the killing of another human being, will be used only in situations of necessity." <u>Id.</u> at 731, 553 S.E.2d at 737; <u>see also</u> <u>Mealy</u>, 135 Va. at 588-90, 115 S.E. at 529

(holding denial of self-defense instruction not error where victim beat defendant and said he would kill her but defendant escaped victim's beating, left room to get gun, and returned to room and shot him in back "after he had seated himself at the table to eat his supper").

Appellant contends she should have been entitled to offer the proffered evidence of the victim's prior physical and emotional abuse of her and her children but that, even if such evidence was properly excluded, the evidence actually admitted nevertheless supported the giving of a self-defense instruction. We hold appellant proffered sufficient evidence of an "overt act indicative of imminent danger," Vlastaris, 164 Va. at 652, 178 S.E. at 776, to entitle her to a self-defense instruction. Thus, at least some of her evidence about the victim's prior threats and abuse was admissible to show "'the reasonable apprehensions of [appellant] for [her] life and safety,'" Canipe, 25 Va. App. at 640-41, 491 S.E.2d at 752 (quoting Randolph, 190 Va. at 265, 56 S.E.2d at 230), immediately prior to the shooting.[1]

Evidence from appellant's son, Darron, proffered but not admitted, established that the victim threatened to kill appellant while in her apartment on the night of the shooting. Although threats, standing alone, do not constitute an overt act entitling a defendant to use self-defense, they nevertheless are relevant in assessing whether the potential assailant's behavior, taken as a whole, establishes the necessary overt act making the threat of harm imminent. See Craig v. Commonwealth, 14 Va. App. 842, 843-44, 419 S.E.2d 429, 430-31 (1992) (holding in malicious wounding case that "the nature and quality of an overt act cannot be judged in a vacuum" and that "the acts [relied upon] must be viewed through the eyes of the person allegedly threatened" such that victim's cursing and threatening to kill defendant coupled with victim's "[going] to his

---

[1] The trial court commented that some of the proffered evidence was too remote in time or was inadmissible for other reasons. We do not address the admissibility of any particular testimony concerning the victim's prior conduct; we hold only that evidence of this general type was admissible based on appellant's claim of self-defense.

car, where he reached 'up under his seat,'" and walking toward defendant with one hand behind his back constituted "a sufficient showing of an overt act by [the victim] to admit the excluded evidence" of previous violence against a third person, who was defendant's wife and victim's sister). The evidence testified to and not stricken from the record, as well as other proffered evidence, if accepted as credible by the jury, could have established the necessary overt act indicative of imminent danger. On the evening of the killing, the victim smelled of alcohol, was "in[] a rage," grabbed appellant by the hair and "hit her in the face and sides" before he ceased the attack and went into the bathroom for a little more than five minutes. An autopsy showed the victim's blood alcohol concentration at the time of his death was .23% by weight by volume and also indicated he had cocaine in his system.

Appellant proffered that when she first met the victim, he raped her, and that he had beaten her severely on several prior occasions. On one occasion, he inflicted a wound on her neck requiring 75 stitches and leaving a permanent scar, and on another occasion, he broke her jaw, which she had to have wired closed for two months. She proffered that, in the past, she had sought help from the police and the courts to protect her from the victim and had moved on numerous occasions but that the victim ignored at least one court order of protection, always managed to learn where she was living, and would eventually appear at her new residence and beat her.

She testified that, when the victim emerged from the bathroom on the night of his death, he again refused to leave, said "nobody can do nothing to him," and resumed his verbal assault. He called appellant a "bitch and whore" and threatened to "sew her vagina shut" and "to smack [her]" and "break [her] up." Appellant testified first that she "[*thought*] he was getting ready to come [back] into the living room" and "[*thought*] he was starting toward [her]," but she then testified without equivocation that "[h]e was coming back" and she was "not sure whether he

- 7 -

was walking or running." (Emphasis added). She was trembling and shaking as he came back toward her, and she said that, if he had actually reached the living room, "I don't know whether I would be alive today."

This evidence, viewed in the light most favorable to appellant, established an overt act of sufficient imminence to entitle her to a self-defense instruction because it supported a finding that the victim, although still over ten feet away, was advancing toward her in a threatening fashion to resume the attack he had stopped only moments earlier. These facts stand in marked contrast to those in Sands, in which the victim had at least temporarily ceased his repeated attacks on the defendant and was watching television in another room when she retrieved a gun and "shot him five times while he reclined on the bed." Sands, 262 Va. at 730, 553 S.E.2d at 737. That the victim here appeared unarmed does not defeat the threat. The victim had beaten appellant with his fists on numerous prior occasions and, on one occasion, broke a glass in her face. Appellant testified that, prior to the night on which she shot the victim, he had beaten her as recently as the previous weekend.

That appellant claimed the shooting was an accident does not prevent her from asserting a legal claim of self-defense. The Supreme Court has recognized that "'[t]he mere fact that the defendant did not, at the time of the killing, believe such killing was necessary does not divest [her] of the right to set up self-defense if the killing was not intended by [her] but was incidental to [her] excusable defense of [herself] when assaulted.'" Valentine v. Commonwealth, 187 Va. 946, 953, 48 S.E.2d 264, 268 (1948) (quoting 1 Wharton's Criminal Law § 623, at 851 (12th ed.)). Further, settled legal principles allow a party to assert alternative legal theories or defenses, and the Supreme Court has held that the facts in a criminal case may support the giving of instructions on both accident and self-defense. See Jones v. Commonwealth, 196 Va. 10, 14-15, 82 S.E.2d 482, 484-85 (1954). Jones involved a struggle over a pistol, id., but we see no

- 8 -

reason to limit the availability of alternative defenses of accident and self-defense to a case involving an actual physical struggle so long as the evidence establishes an overt act necessary to allow one to invoke the doctrine of self-defense.[2] Further, the Court in <u>Jones</u> held the defendant was entitled to a self-defense instruction even though the defendant's testimony directly supported only the claim that the shooting was an accident. The defendant in <u>Jones</u> testified that the victim had a pistol and that "[t]he pistol went off about three times when we were tussling," after which the defendant said he "twisted [the victim's] hand and got the pistol." <u>Id.</u> at 13, 82 S.E.2d at 484. Thus, the defendant's testimony supported an accident instruction, which the trial court gave, but it denied his request for an instruction on self-defense. <u>Id.</u> at 14-15, 82 S.E.2d at 485. On appeal, the Supreme Court held

> the jury could well conclude that [the defendant] neither provoked the encounter nor willingly entered into mutual combat, but merely sought to defend himself when [the victim] drew his pistol. Different inferences, i.e., accidental killing or killing in self-defense, might be reasonably drawn from what was said and done. Under such circumstances [the] accused was entitled to have both of his theories of the case submitted to the jury, and an appropriate instruction upon the theory of self-defense should have been given by the court.

<u>Id.</u> at 15, 82 S.E.2d at 485.

In appellant's case, a jury rejecting her claim of accident could nevertheless have found the facts were sufficient to justify her shooting the victim in self-defense. Appellant's son testified that, using two hands, appellant pointed the weapon directly at the victim's shoulder, in contrast to appellant's testimony that, while she was shaking with fear, she merely waved the gun in the victim's direction in an effort to scare him into leaving. If the jury accepted Darron's

---

[2] The holding in <u>Jordan v. Commonwealth</u>, 219 Va. 852, 252 S.E.2d 323 (1979), relied on by the Commonwealth and the trial court in making its ruling, does not require a different result. <u>Jordan</u> involved a victim who made only verbal threats and a defendant who returned from a place of safety to renew his confrontation with the victim. <u>Id.</u> at 855-56, 252 S.E.2d at 325-26.

testimony about the manner in which appellant held the gun, this, coupled with Darron's proffered testimony that the victim had threatened to kill her that evening and appellant's testimony that the victim had beaten her just a few minutes earlier and was again advancing toward her in the living room while continuing to threaten physical violence, was sufficient to support a finding that she shot the victim in self-defense. Because the trial court rejected appellant's self-defense theory and, thus, refused to admit much of her proffered evidence regarding the victim's prior threats and abuse, we cannot say these errors did not affect the verdict.

Finally, even if appellant had not been entitled to an instruction indicating that the right of self-defense fully justified her use of deadly force because the threat posed by the victim was not sufficiently imminent, she nevertheless was entitled to an instruction indicating that the right of self-defense justified her merely *threatening* to use such force.

> The force used to repel an addressable threat must be no more than necessary, i.e., deadly force may be met with deadly force, but less than deadly force must be met with a proportionally reduced response. . . . The *threat* of deadly force, rather than its actual use, may be the appropriately proportional response to some forceful overtures.

Costello, supra, § 33.2-2, at 430 (emphasis added). Thus, the victim's physical abuse of appellant on the night in question, his threat to kill her, and his renewing those threats on returning from the bathroom toward her position in the living room constituted a sufficient overt act to justify her retaining the gun she seized from her son and her subsequently picking the gun up from the couch and pointing it at the victim. Although appellant's proffered self-defense instruction did not cover this theory, her proffered right to arm instruction did.

Appellant also argued that the right to arm instruction was proper because it provided an explanation for her purchasing the gun different from the Commonwealth's anticipated argument that her purchase of it showed her killing of the victim was premeditated. The trial court refused

appellant's proffered right to arm instruction, concluding it was not justified under <u>Lynn v. Commonwealth</u>, 27 Va. App. 336, 499 S.E.2d 1 (1998), and <u>Bevley v. Commonwealth</u>, 185 Va. 210, 38 S.E.2d 331 (1946), because "[t]his is not a case where there is some testimony that this specific victim specifically threatened to kill or harm [appellant] and that she reasonably apprehended that he would carry it out and as a result of that threat went and armed herself." We hold that refusal was error under the facts of this case.

<u>Lynn</u> is factually distinguishable, and the rulings in <u>Bevley</u> and <u>Jones v. Commonwealth</u>, 187 Va. 133, 45 S.E.2d 908 (1948), both of which the Court discussed and distinguished in <u>Lynn</u>, support the conclusion that appellant was entitled to a right to arm instruction under the facts of this case. In <u>Lynn</u>, the defendant was involved in a physical struggle with the victim and contended he "seized [the victim's] firearm in order to repel an immediate threat of harm from [the victim]." 27 Va. App. at 348, 499 S.E.2d at 6. The Court ruled that "[t]o disarm an assailant during an attack and to use the weapon against the attacker does not constitute exercising the right to arm oneself in order to avert or resist an anticipated deadly attack." <u>Id.</u> at 348, 499 S.E.2d at 7. The Court also noted that the jury was instructed on "the law of self-defense and defense of others," leaving it "free to conclude that [Lynn] did not maliciously kill [the victim] but rather disarmed and shot [the victim] in order to protect himself or his family from an immediate threat of death or serious bodily harm." <u>Id.</u>

In <u>Bevley</u>, the defendant was attending a party when another guest threatened to shoot him. 185 Va. at 213, 38 S.E.2d at 332. Bevley obtained a handgun from his car, and during an altercation shortly thereafter, he shot and killed the guest. <u>Id.</u> "At trial, Bevley was confronted with the fact that his having consciously and deliberately armed himself could be considered as evidence of a malicious and premeditated killing, without an explanation that a person has a right to arm and defend himself or herself against a perceived attack." <u>Lynn</u>, 27 Va. App. at 347, 499

- 11 -

S.E.2d at 6. The Supreme Court held the trial court should have instructed the jury "'that one who has been threatened with murderous assaults and has reason to believe that such assaults will be made, may arm himself in his defense and in such case no inference of malice can be drawn from the fact of *preparation* for it.'" Bevley, 185 Va. at 213, 38 S.E.2d at 332 (quoting State v. Summers, 188 S.E. 873, 875 (1936) (emphasis added)).

In Jones, the victim beat and threatened to kill Jones, who then obtained a handgun from his house and shot the victim fifteen minutes later. 187 Va. at 141-42, 45 S.E.2d at 911-12. The Court held that the refusal of a right to arm instruction on these facts was erroneous. Id.

In the context of the facts in Lynn, we interpreted Bevley and Jones to stand for the proposition that

> the right to arm instruction is required only where the evidence fairly suggests that the accused obtained the firearm in *preparation* for a *future* deadly attack. In both cases, the defendants consciously and deliberately armed themselves rather than seizing an available weapon to fend off an attack against themselves or family members.

Lynn, 27 Va. App. at 348, 499 S.E.2d at 6.

Here, appellant did not seize the weapon from the victim, her potential assailant, as occurred in Lynn. Rather, the evidence, viewed in the light most favorable to appellant, supported a finding that she obtained the firearm in preparation for a future deadly attack by the victim at three discreet times--when she first purchased the firearm; when she snatched it from her son's hands while the victim was in the bathroom and kept it by her side rather than hiding it or returning it to its place in her room; and when she picked it up off the couch and pointed it at the victim as he again advanced toward her where she sat on the couch. The instruction was relevant to appellant's explanation for why she purchased the gun. Her testimony that she purchased the gun to protect herself, her home and her family does not preclude the conclusion that she intended to protect them, at least in part, from the victim, who, her proffered testimony

- 12 -

established, had repeatedly beaten her and her children and inflicted serious injuries on her on numerous prior occasions. The instruction also was relevant to explain why appellant kept the gun after seizing it from her son and why she picked it up when the victim returned from the bathroom, after which time she claimed it accidentally discharged. To the extent the Commonwealth planned to argue that appellant's purchase of the weapon or use of it on September 6, 2002 showed malice, she was entitled to an instruction that permitted her to argue she had "a right to arm and defend . . . herself against a perceived attack." Lynn, 27 Va. App. at 347, 499 S.E.2d at 6. Further, this theory also required the admission of evidence of the victim's history of violence toward appellant and their children in order to show "'the reasonable apprehensions of [appellant] for [her] life and safety'" sufficient to justify her arming herself. Canipe, 25 Va. App. at 640-41, 491 S.E.2d at 752 (quoting Randolph, 190 Va. at 265, 56 S.E.2d at 230).

### 2. Voluntary Manslaughter and Heat of Passion

Code § 18.2-32 provides in relevant part that "[m]urder . . . by any willful, deliberate and premeditated killing . . . is murder of the first degree." "To premeditate means to adopt a specific intent to kill, and that is what distinguishes first and second degree murder." Smith v. Commonwealth, 220 Va. 696, 700, 261 S.E.2d 550, 553 (1980). "Second degree murder is defined as a 'malicious killing' of another person." Lynn, 27 Va. App. at 351, 499 S.E.2d at 8. "Manslaughter, on the other hand, is the unlawful killing of another without malice. . . . Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986).

Here, if the jury rejected the testimony of appellant and her son, Darron, that she removed the clip from the gun and thought the gun was not loaded and accepted Darron's testimony that

- 13 -

appellant pointed the gun directly at the victim, coupled with the Commonwealth's evidence that the pressure required to pull the trigger on the gun was not insignificant, it could find that the shooting was intentional. Also, appellant's testimony of the victim's prior conduct that evening and her testimony that he was coming back into the living room, where she feared he would assault her further and perhaps kill her, created a jury issue on whether there had been a cooling off period sufficient to preclude a finding that appellant acted in the heat of passion. Thus, the trial court's refusal to give the proffered instruction was error.

Nevertheless,

> where the reviewing court is able to determine that the trial court's error in failing to instruct the jury could not have affected the verdict, that error is harmless. Such a determination can be made where it is evident from the verdict that the jury would have necessarily rejected the lesser-included offense on which it was not instructed.

Turner v. Commonwealth, 23 Va. App. 270, 276, 476 S.E.2d 504, 507 (1996), aff'd, 255 Va. 1, 492 S.E.2d 447 (1997). When a jury is instructed on first-degree murder and second-degree murder and convicts the defendant of first-degree murder, such a verdict "compels the conclusion that [the jury] would never have reached a voluntary manslaughter verdict." Id. at 277, 476 S.E.2d at 508.

Thus, under ordinary circumstances, the jury's conviction of appellant for first-degree murder would preclude a finding that the court's failure to instruct on voluntary manslaughter was reversible error. Here, however, voluntary manslaughter was not the only legal theory on which the trial court erroneously failed to instruct the jury. As discussed above, it failed to instruct on self-defense and the right to arm. Absent either or both of these instructions, the jury might erroneously have concluded that either appellant's purchasing the firearm or deliberately using it against the victim on the night of his death compelled a finding that she acted with premeditation or malice. Thus, the jury's findings of malice and premeditation are tainted by the

- 14 -

erroneous failure to instruct on self-defense and the right to arm, and we are unable to conclude the refusal to give voluntary manslaughter and heat of passion instructions was harmless error.

C.

SUFFICIENCY OF EVIDENCE FOR FIRST-DEGREE MURDER CONVICTION

Although we hold the court erred in excluding evidence of the victim's prior violence and threats and in failing to instruct the jury on self-defense, the right to arm, and voluntary manslaughter--errors that require us to vacate the convictions and remand for a new trial--we would be compelled to dismiss the indictments rather than merely vacate the convictions if the evidence adduced at trial was insufficient to support convictions for first-degree murder and use of a firearm. Thus, we examine the evidence in the record in the light most favorable to the Commonwealth and conclude that it was sufficient to support appellant's convictions.

"To prove premeditated murder, the Commonwealth must establish: '(1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent.' Premeditation requires the formation of the specific intent to kill." Archie v. Commonwealth, 14 Va. App. 684, 689, 420 S.E.2d 718, 721 (1992) (quoting Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989)). "It rests within the province of the trier of fact to determine whether a defendant acted willfully, deliberately and with premeditation in killing his victim." Morris v. Commonwealth, 17 Va. App. 575, 578, 439 S.E.2d 867, 869 (1994).

Here, the evidence established that appellant and the victim had been involved in a romantic relationship "on and off" for about sixteen years before the victim's death and had three children together. About three months prior to the shooting on September 6, 2002, appellant purchased a semi-automatic firearm. About three weeks before the shooting, appellant went to a restaurant where the victim's sister, Yolanda Beekman-Bray, worked. Appellant told

Beekman-Bray, "I bought a gun, and I'll use it," and "[Y]ou better tell [the victim] to stop before I start." Appellant, who testified she was bipolar, also told Beekman-Bray, "I am on these pills now. I am legally crazy. So if I kill [the victim], I am not going to get a day of time." Later that same day, appellant telephoned Beekman-Bray and repeated her threat, saying, "[I]f [you] don't think that [I'll] kill [the victim], to let her know." Beekman-Bray also testified that appellant and the victim had argued on prior occasions about money.

Appellant bought bullets for the firearm and admitted loading it on September 4, 2002, two days before shooting the victim. Tracy Tabron, an acquaintance of the victim's who had also dated appellant and was with her when she purchased the firearm, testified appellant told him on September 5, 2002, the day before the shooting, that, "[I]f [the victim] don't have her no money by . . . Friday, she was going to kill him." The next day, Friday, September 6, 2002, appellant shot the victim while he was standing eleven to eighteen feet away from her. Her son testified that she pointed the firearm directly at the victim's chest and shoulder before firing. The Commonwealth offered evidence that the pressure required to pull the trigger on the gun was not insignificant, making it unlikely that the firearm would discharge accidentally. The victim was unarmed at the time of the shooting.

Although appellant called 911 immediately after the shooting, she and her son moved the victim's body outside her apartment, and appellant told police the victim had already been shot when he appeared at her door. She claimed to have no idea concerning where the victim had been shot or by whom. She gave no indication that the victim had attacked or beaten her, and the officer observed no visible marks or bruises on her body. Appellant told the investigating officer that the victim owed her child support money, and the officer testified that appellant appeared to be angry about that fact.

When the investigating officers were unable to learn anything about the victim's shooting by canvassing the neighborhood, they questioned appellant further. She tacitly admitted shooting the victim but claimed she could not remember all the events of that evening and that the shooting was an accident. Not until appellant testified at trial did she claim that the victim had beaten her on the night of his death.

Based on this evidence, the fact finder was entitled to reject appellant's claim that she shot the victim accidentally and to conclude that she shot him willfully, deliberately and with premeditation, thereby supporting her convictions for first-degree murder and the concomitant use of a firearm.

II.

For these reasons, we hold appellant did not properly preserve her claim that the trial court abused its discretion by directing her to compose herself. We also hold that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to support her convictions for first-degree murder and the concomitant use of a firearm. However, because the court's blanket exclusion of evidence of the victim's prior threats and violence toward her, coupled with its rejection of her jury instructions on self-defense, right to arm, voluntary manslaughter and heat of passion, constituted reversible error, we vacate her convictions and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

<u>Vacated and remanded.</u>