COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


RONALD BEASLEY CHANEY, S/K/A
  RONALD B. CHANEY, III
                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 1197-07-2              JUDGE JEAN HARRISON CLEMENTS
                                                        APRIL 1, 2008
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF HENRICO COUNTY
                               Burnett Miller, III, Judge

            G. Russell Stone, Jr. (Bowen, Champlin, Carr, Foreman &
            Rockecharlie, on brief), for appellant.

            Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
            Attorney General, on brief), for appellee.


        Ronald Beasley Chaney (appellant) was convicted of two counts of malicious wounding

in violation of Code § 18.2-51, two counts of using a firearm in the commission of malicious

wounding in violation of Code § 18.2-53.1, conspiracy to commit robbery in violation of Code

§§ 18.2-22 and 18.2-58, and wearing body armor in violation of Code § 18.2-287.2.  On appeal,

he contends the trial court erred in refusing to allow him to withdraw his guilty pleas before

sentencing.  We disagree and affirm the trial court's judgment and appellant's convictions.

        As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

--------

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

In connection with events occurring on the night of June 27, 2006, appellant was charged with two counts of malicious wounding, two counts of using a firearm in the commission of malicious wounding, conspiracy to commit robbery, and wearing body armor.[1]

According to the evidence proffered by the Commonwealth without objection, appellant and his cousin, Wade Robertson, planned to rob Omari Barrett through the guise of selling Barrett an AK-47 in exchange for drugs and money. In furtherance of the plan, appellant and Robertson armed themselves with handguns, dressed in bulletproof vests, and convinced another individual, Gary Sanford, to join them in the commission of the robbery. In a red Kia vehicle, appellant, Robertson, and Sanford rode to an apartment complex where they had planned to meet Barrett. After they arrived and parked the vehicle, Barrett approached and entered the vehicle, sitting in the backseat with appellant who held the AK-47.

Almost immediately, Barrett's two friends, Lamont Thomas and Thomas Scott, approached the vehicle on either side. Thomas and Scott, armed with guns, saw the AK-47 in the backseat of the vehicle. Barrett heard one of the three men in the car say something about a robbery. When Sanford saw one of Barrett's friends pull out a gun, he bent down onto the floor of the vehicle. Robertson and appellant also drew their guns and began shooting at Thomas and Scott. Scott retreated to the apartment complex but returned and shot at the vehicle when he saw that Thomas had been shot.

Inside the vehicle, Barrett and appellant wrestled for appellant's pistol. During the struggle, appellant shot Barrett in the arm and Robertson, who sat in the driver's seat, turned and

---

[1] Although appellant was charged originally with eleven felonies, the Commonwealth nolle prossed five of the indictments (attempted robbery, use of a firearm in the commission of attempted robbery, shooting from a vehicle so as to endanger others, and two charges of aggravated malicious wounding) pursuant to a plea agreement.

shot towards the backseat. Appellant also attempted to shoot the AK-47 from his backseat window but dropped the gun outside of the vehicle. Barrett threw appellant out of the car and reached for the AK-47. Robertson told Barrett to drop the money and following Barrett's refusal, Robertson shot at Barrett who jumped from the vehicle. Barrett received shots in the arm and shoulder, Scott sustained a shot to the stomach, and Thomas was shot in the stomach and chest. Robertson and Sanford departed in the vehicle leaving appellant at the scene.

Pursuant to a plea agreement, appellant entered guilty pleas to six of the eleven felonies originally charged. During the plea colloquy, appellant maintained that he had an opportunity to speak with counsel about the charges, that he understood the charges, that by pleading guilty, he waived his right to a jury trial, his right against self-incrimination, his right to confront and cross-examine witnesses, and his right to appeal. He claimed that he made his pleas willingly and voluntarily and did so because he was guilty. Appellant further claimed that he was not forced to plead guilty by threat or intimidation. The trial court accepted the pleas, finding they were made willingly, intelligently, and voluntarily.

Prior to sentencing, appellant moved to withdraw his pleas on the ground that he acted in self-defense. At the hearing on appellant's motion, he maintained that he "never purposely shot anybody during the entire situation." He claimed he "shot one person, and that was an accident" because it was a "struggle for a firearm." Specifically, when Barrett's two friends approached the red Kia, appellant "was forced to try to defend" himself. Barrett grabbed appellant's pistol, and a struggle ensued. During the struggle, the gun "accidentally went off twice and hit [Barrett] in the arm." Appellant further stated that he "never purposely . . . held the gun to anybody that wasn't a threat to [him]." He admitted that he "may have got off a shot or two before [Barrett] grabbed the gun . . . out of the window maybe at [his] aggressors, but other than that, [appellant

- 3 -

was] not clear on that." Appellant claimed he was "pressured" into the robbery by Robertson because he owed Robertson money.

Appellant, however, admitted to the trial court that the evidence had not changed since the time of his guilty pleas. He also acknowledged that he answered truthfully during the plea colloquy and that before he entered his guilty pleas, he had spent three or four hours with his attorney reviewing his case. After appellant entered his guilty pleas, he discussed his case with family members and reviewed self-defense law. Consequently, appellant decided he was innocent by means of self-defense and wished to withdraw his guilty pleas.

The trial court denied appellant's motion and sentenced him on the convictions.

This appeal followed.

## II. ANALYSIS

On appeal, appellant contends the trial court erred in refusing to grant his motion to withdraw his guilty pleas "where [appellant] ha[d] offered a reasonable ground for trying the matter and the trial court applied an incorrect standard to [appellant's] motion." We disagree with appellant.

"Whether a defendant should be permitted to withdraw a guilty plea rests within the sound discretion of the trial court to be determined based on the facts and circumstances of each case." Hall v. Commonwealth, 30 Va. App. 74, 79, 515 S.E.2d 343, 346 (1999). "The court's finding as to the credibility of witnesses and the weight of the evidence in support of a motion to withdraw a guilty plea will not be disturbed unless plainly wrong or without evidence to support it." Jones v. Commonwealth, 29 Va. App. 503, 512, 513 S.E.2d 431, 435 (1999).

> Code § 19.2-296 provides that "[a] motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea." Under the express

- 4 -

terms of the statute, when the motion is made after entry of a final order imposing sentence or deferring the imposition of sentence, a defendant will be allowed to withdraw a guilty plea only while the case remains under the trial court's jurisdiction for twenty-one days and only "to correct [a] manifest injustice."

Justus v. Commonwealth, 274 Va. 143, 152, 645 S.E.2d 284, 288 (2007). When the motion to withdraw a guilty plea is made before the sentence has been imposed, "logic dictates that the standard must be more liberal than the requirement of showing a manifest injustice." Id. at 153, 645 S.E.2d at 288. That more liberal standard is described in Parris v. Commonwealth, 189 Va. 321, 325, 52 S.E.2d 872, 874 (1949), as follows:

"the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place. The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient grounds for permitting a change of plea from guilty to not guilty. Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or *even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury.*"

(Emphases added).

In addition, a "'merely dilatory or formal defense'" to the charges will not establish a reasonable ground for going to the jury. Coleman v. Commonwealth, 51 Va. App. 284, 289, 657 S.E.2d 164, ___ (2008) (quoting Justus, 274 Va. at 155-56, 645 S.E.2d at 290). Rather, "'the accused should be permitted to withdraw a plea of guilty entered [i]nadvisedly when application therefor is duly made in good faith and sustained by proofs, and a proper offer is made to go to trial on a plea of not guilty.'" Justus, 274 Va. at 153-54, 645 S.E.2d at 288 (quoting Parris, 189 Va. at 325-26, 52 S.E.2d at 874).

To assert the affirmative defense of self-defense without fault, the defendant must be completely free of fault in provoking or bringing about the confrontation that resulted in the

- 5 -

killing or wounding. See Smith v. Commonwealth, 165 Va. 776, 785, 182 S.E. 124, 128 (1935) (holding that, to employ the without-fault self-defense, the defendant "must have been without fault in the 'minutest degree'"). "[A] person cannot rely upon a plea of self-defense in a case of homicide or assault when he himself was the aggressor and wilfully brought on, without legal excuse, the necessity for the homicide or assault." Jordan v. Commonwealth, 219 Va. 852, 855, 252 S.E.2d 323, 325 (1979) (citing Sims v. Commonwealth, 134 Va. 736, 115 S.E. 382 (1922)).

Considering the facts and circumstances of this case, appellant's justifications for withdrawing his guilty pleas do not constitute evidence of "reasonable ground[s]" for trying the matter as set forth in Justus and Parris. Having received advice from family members and upon a review of self-defense law, appellant simply changed his mind as to his guilt based on a theory of self-defense. The record proves, however, that appellant's actions do not constitute any viable self-defense claim because he provoked and planned the robbery with Robertson, armed himself with guns and body armor, acted in furtherance of the plan, struggled for control of his firearm with Barrett, shot Barrett, and also shot at other aggressors approaching the vehicle.

Furthermore, unlike the defendant in Parris, appellant claimed no mistake of fact or otherwise asserted that he entered his pleas with "the least surprise or influence" or out of "fear, fraud, or official misrepresentation." Contrary to the defendant in Justus, appellant also failed to support his claim of self-defense with affidavits and proffers to the trial court, and in fact, agreed that the evidence had not changed since the time he entered his guilty pleas. Instead, appellant presented a "merely dilatory or formal defense," one not supported by the record and one not established by the law of self-defense. See Coleman, 51 Va. App. at 292, 657 S.E.2d at ____ (rejecting a claim of misidentification as a reasonable defense when five witnesses recognized the defendant as the perpetrator, the trial court found the evidence to be "overwhelming" against

the defendant, and defendant presented no affidavits, alibi witnesses, or other explanations for a mistaken identity defense).

Although the trial court used the phrase "manifest [injustice]" in rendering its decision, the trial court's discussion and rationale demonstrates that it actually evaluated the facts and circumstances properly within the mandate of Justus. In assessing appellant's self-defense claim, the trial court noted that appellant's attorney attempted to create speculation as to which side shot first during the robbery incident. Concluding that the evidence did not support that speculation, the trial court found, as follows:

> But the point of it is that wasn't the evidence. It didn't happen that way. And that was not the evidence that was previewed in court, which you heard and didn't contest at that time.

In addition, the trial court stated, as follows:

> I also asked you whether anything had changed with regard to your perception of self-defense, and you said, no. I mean the evidence is the same, one way or the other. The point is now that you just want to change your plea. And there has to be some finality, and if the plea is voluntary, it's intelligent, it's based on all of the facts and circumstances at the time, then it's a valid guilty plea. And I so find.

Accordingly, because the trial court's rationale comports with the mandate of Justus, and because the evidence supports that rationale, we find the trial court properly denied appellant's motion to withdraw his guilty pleas.

### III. CONCLUSION

For these reasons, we affirm the judgment of the trial court and appellant's convictions.

Affirmed.